## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                                   **No. 15-61**

**LISA CRINEL, ET AL.**                              **SECTION "E" (5)**

## ORDER AND REASONS

Before the Court is the Government's Motion *in Limine* to Exclude Improper Evidence at Trial.[1] The Government requests that this Court enter an order prohibiting the defendants from attempting to: (1) elicit testimony regarding self-serving hearsay statements that the Defendants made to third parties; (2) use reports authored by law enforcement agents to impeach the Government's witnesses at trial; (3) refer to the penalties faced by the Defendants or the hardships that the Defendants' convictions would impose on their families or others; (4) elicit opinion testimony from private investigators about whether they believe a beneficiary was confined to the home or otherwise qualified for home health care; (5) elicit expert testimony regarding the Defendants' states of mind; (6) instruct the jury on the meaning or applicability of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b); (7) invoke an advice-of-counsel without waiving privilege or otherwise meeting the requirements for this defense; (8) advance evidence or arguments regarding the number of patients the Government highlights at trial; and (9) introduce evidence or arguments regarding race or prosecutorial motives.[2] Defendant Sheldon Barnes filed an opposition to the Government's motion.[3] Defendants

---

[1] R. Doc. 702.
[2] *Id.* at 1.
[3] R. Doc. 709.

Michael Jones and Henry Evans filed motions to adopt and join in Dr. Barnes' opposition.[4]

For the reasons that follow, the Government's motion *in limine*[5] is **GRANTED IN PART** and **DENIED IN PART**.

## DISCUSSION

### I. <u>Motion *in Limine* to Exclude Defendants from Eliciting Testimony About Their Own Hearsay Statements to Third Parties</u>

The Government moves to exclude evidence of defendants' self-exculpatory statements to third parties. The Government "believes that the Defendants will attempt to use testimony by third parties at trial to introduce exculpatory statements that the Defendants purportedly made."[6] The Government argues these self-serving exculpatory statements are hearsay and are not subject to any exception to the rule against hearsay.[7] Accordingly, the Government maintains that these statements are not admissible.[8]

Defendant Barnes argues the Government's request for exclusion of evidence is "premature and should be urged at the appropriate time at trial, if necessary."[9] Additionally, Defendant Barnes maintains "the Court need not enter an Order to inform the parties that it intends to enforce the Federal Rules of Evidence at trial, or any specific part thereof."[10]

"The hearsay rule, F.R.E. 802, is premised on the theory that out-of-court statements are subject to particular hazards."[11] As the Government correctly explains:

---

[4] R. Doc. 740; R. Doc. 758.
[5] R. Doc. 702.
[6] R. Doc. 702-1, at 2.
[7] *Id.*
[8] *Id.*
[9] R. Doc. 709, at 1.
[10] *Id.*
[11] *Williamson v. United States*, 512 U.S. 594, 599 (1994).

> While the Federal Rules of Evidence recognize that some types of out-of-court statements are "less subject to these hearsay dangers, and therefore exempt from them general rule that hearsay is inadmissible . . . [s]elf-exculpatory statements are exactly the ones which people are most likely to make when they are false," and thus are not excepted from Rule 802's prohibition against hearsay.[12]

While the Rules provide exceptions to the general prohibition against hearsay, "The rules do not, however, provide exceptions for self-serving, exculpatory statements made by a party which are being sought for admission by that same party."[13] "Indeed, if such statements were deemed admissible . . . parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury."[14]

Courts have made clear that out-of-court exculpatory statements made by the defendant are inadmissible even if the exculpatory statement is made in tandem with a statement that is admissible under one of the hearsay exceptions. For example, the Federal Rules of Evidence provides exceptions to the general exclusion of hearsay for an opposing party's statement[15] and for statements against interest.[16] In *United States v. Morad, et al.*, the court found "statements 'collateral to a self-inculpatory statement' should not 'be treated any differently from other hearsay statements that are generally excluded.'"[17] The *Morad* court concluded, "Thus, Rule 801(d)(2) 'does not extend to a party's attempt to introduce his or her own statements through the testimony of other witnesses.'"[18] As a result, while the Government may introduce part of a statement made

---

[12] R. Doc. 702-1, at 3 (quoting *Williamson*, 512 U.S. at 599-600).

[13] *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996).

[14] *Id.* (citing *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000)).

[15] FED. R. EVID. 801(d)(2).

[16] *Id.* at 804(b)(3).

[17] *See United States v. Morad, et al.*, No. 2:13-CR-101 (E.D. La. Apr. 27, 2016) (R. Doc. 328, at 2-3) (quoting *Williamson*, 512 U.S. at 600).

[18] *Id.* at 3 (quoting *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005)).

by the defendant, or part of a statement that included a statement against interest, the defendant could not then seek to introduce the exculpatory part of the statement that had not been introduced.[19]

The Government's motion *in limine* to exclude the Defendants from eliciting testimony regarding self-serving hearsay statements the Defendants made to third parties is **GRANTED**.[20] **IT IS ORDERED** that the Defendants will not be allowed to elicit testimony about Defendants' self-exculpatory hearsay statements.

## II. <u>Motion *in Limine* to Exclude Defendants from Attempting to Use Reports Authored by Law Enforcement Agents to Impeach the Government's Witnesses at Trial.</u>

The Government moves to prohibit Defendants from attempting to use reports authored by law enforcement agents to impeach the Government's witnesses at trial.[21] Additionally, the Government requests that this Court "preclude the Defendants from publishing the contents of the interview reports to the jury, or otherwise suggesting to the jury that the interview report is a statement of the witness."[22] The Government argues "interview reports are not prior statements of a witness unless they contain a verbatim recital of the witness's statement or are signed or otherwise adopted by the witness."[23] The Government maintains "The Defendants are free to ask a witness whether he or she made a statement that is reflected in an agent's interview report," but should be precluded

---

[19] *See id.* at 6 (granting the government's motion and ordering defendants not to elicit testimony about defendants' self-exculpatory hearsay statements).

[20] Federal Rule of Evidence 106, which partially codifies the common law "rule of completeness," applies only to written and recorded statements. *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). Any self-exculpatory statement which has been excluded under Rule 106 may be introduced only if the excluded evidence is "necessary to qualify, explain, or place into context the portion already introduced. *United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996). If the evidence takes the form of testimony from an agent's memory, Rule 106 will not apply. *United States v. Garcia*, 530 F.3d 348, 353 (5th Cir. 2008).

[21] R. Doc. 702.

[22] R. Doc. 702-1, at 4.

[23] *Id.* (citing *Palermo v. United States*, 360 U.S. 343, 349-52 (1959); *Goldberg v. United States*, 425 U.S. 94, 110 n.19 (1976); *United States v. Merida*, 765 F.2d 1205, 1215 (5th Cir. 1985)).

"from publishing or introducing the contents of the interview report as a prior inconsistent statement if the Defendants are not satisfied with the witness's answers."[24]

Dr. Barnes states "The defense intends to follow the Federal Rules of Evidence," and argues the Government's motion "is fact and context specific and cannot be granted or denied until attempts are made at trial to use them."[25]

Federal Rule of Evidence 607 provides: "Any party, including the party that called the witness, may attack the witness's credibility."[26] "One common method of doing so is to impeach the witness with a prior inconsistent statement made by that witness. When proof of such a statement goes beyond merely questioning the testifying witness and, therefore, involves the use of extrinsic evidence, FRE 613 is the controlling rule."[27] Federal Rule of Evidence 613(b) provides: "Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."[28] The Fifth Circuit has explained Rule 613(b) requires that extrinsic evidence of a prior inconsistent statement may only be used "if the witness on cross-examination denies having made the statement."[29]

A Colorado district court in *Santistevan* explained that evidentiary Rule 613(b) is distinct from the requirements at issue in Rule 26.2 of the Federal Rules of Criminal Procedure and the Jencks Act "which address the obligation of counsel to produce certain statements made by a witness who testifies at trial."[30] Neither Rule 26.2 of the Federal

---

[24] *Id.* at 5.
[25] R. Doc. 709, at 2.
[26] FED. R. EVID. 607.
[27] *United States v. Santistevan*, 2012 WL 2862870, at *2 (D. Colo. July 11, 2012).
[28] FED. R. EVID. 613(b).
[29] *United States v. Devine*, 934 F.2d 1325, 1344 (5th Cir. 1991).
[30] *Santistevan*, 2012 WL 2862870, at *2.

Rules of Criminal Procedure nor the Jencks Act are evidentiary rules.[31] The *Santistevan* court correctly identified impeachment of a witness by way of a prior inconsistent statement is an evidentiary matter and therefore to be analyzed under the Federal Rules of Evidence. As a result, the *Santistevan* court concluded that whether a witness may be impeached with a prior inconsistent statement contained in a law enforcement agent's interview report must be analyzed under Rule 613 of the Federal Rules of Evidence.

This Court agrees that the motion *in limine* must be decided under Rules 607 and 613 of the Federal Rules of Evidence. As explained in *Santistevan*:

> Defendants will not be precluded from using extrinsic evidence to impeach a witness, provided an appropriate foundation for such evidence is laid pursuant to FRE 613, *i.e.*, the statement at issue must be inconsistent with the witness's trial testimony . . . and the witness must be given an opportunity to explain or deny the statement.[32] In short, the witness first must be asked whether or not he made the statement. If the witness admits to having made a prior inconsistent statement, then the use of impeachment evidence under FRE 613 would be inappropriate. If, however, the witness denies having made the prior inconsistent statement, then extrinsic evidence of the prior inconsistent statement may be offered. Generally, such extrinsic evidence is the written statement itself, if given under oath or otherwise adopted by the witness. In this situation, however, because the statements written in the reports were not given under oath and there is no evidence that the witness ever saw such statements, much less adopted them, the extrinsic evidence must, absent extraordinary circumstances, be via the testimony of the person to whom the statement was allegedly made."[33]

To determine whether the agent's report may be used as extrinsic evidence in the cross-examination of the Government witness who allegedly made the statement, the Court must decide whether the law enforcement agent's interview report is in fact a prior "statement" made by the witness. In this context, case law regarding the Jencks Act

---

[31] *See Id.*
[32] *Id.*
[33] *Id.* The court in *Santistevan* ultimately found the circumstances in that case were extraordinary as the author of the interview report, who was also the only witness to the statement, was currently deployed in Afghanistan. *Id.* at 3.

provides insight into whether or not information in an agent's report can in fact be considered a witness' statement. In *Menendez v. United States*, a Jencks Act case, the Fifth Circuit explained, "the defense should not be allowed to use statements to impeach a witness which would not fairly be said to be the witness's own statement rather than the investigator's interpretations."[34] In *United States v. Martinez*, another Jencks Act case, the Fifth Circuit explained, "Interview reports which contain the interpretations or impressions of agents or 'which were prepared after the interview without the aid of complete notes, and hence rest on the memory of the agent' did not constitute 'statements' within the meaning of the [Jencks] Act."[35] Investigation reports or notes are "statements" of a witness if the witness "'signed or otherwise adopted or approved' the report . . . or the notes were 'substantially verbatim reports' of the witness interview."[36]

The Government represents the interview reports are not statements because the reports in question are not verbatim recitals of witness statements and were not signed or otherwise adopted by the witnesses and, as a result, may not be used as extrinsic evidence to impeach the Government witnesses under Rule 613.[37] If it can be established that a Government witness did adopt a statement or it was recorded verbatim, the interview report may be used for impeachment during the cross-examination of the witness who made the statement. If not, the report itself may be offered only through the agent to prove that the statement was made to the agent, rather than to prove the truth of

---

[34] *Menendez v. United States*, 393 F.2d 312, 316 (5th Cir. 1968) (citing *Palermo v. United States*, 360 U.S. 343, 350 (1959)).
[35] *United States v. Martinez*, 87 F.3d 731, 735 (5th Cir. 1996) (quoting *United States v. Judon*, 581 F.2d 553, 555 (5th Cir. 1978)).
[36] *United States v. Welch*, 810 F.2d 485, 490 (5th Cir. 1987) (citing 18 U.S.C. § 3500(e)(1)-(2)). Of course, an agent's report may be the statement of the agent. *See United States v. Morad, et al.*, No. 2:13-CR-101 (E.D. La. Apr. 27, 2016) (R. Doc. 328, at 7 n.7) (citing *Welch*, 810 F.2d at 490).
[37] R. Doc. 702-1, at 5.

the matter asserted in the statement.[38] Further, as the court in *Bittelman* explained, "defendants may then impeach [the witness] with [the agent's] testimony as to what [the witness] told him during the investigation, not for the truth of the matter asserted but to impeach."[39] The *Bittelman* court explained, "If necessary, the court will provide a curative instruction, explaining to the jury that [the agent's] testimony should only be considered in assessing [the witness'] credibility and not for the truth of what [the witness] purportedly told [the agent]."[40]

**IT IS ORDERED** that a law enforcement agent's interview report may be used for impeachment of the witness who allegedly made the statement only if the report has been signed, adopted, or is a substantially verbatim report of the witness interview. If the defense believes statements in a report meet this requirement, the Defendant must request an evidentiary hearing prior to trial to obtain testimony from both the law enforcement agent and the Government witness in order to establish a proper foundation for the admission of the extrinsic evidence in connection with the cross-examination of the witness who allegedly made the statement. If the proper foundation is established that the report was signed or adopted by the witness or is a verbatim report of the witness interview, statements in the agent's report may be used during cross-examination of the witness who allegedly made the statement for purposes of impeachment. If the proper foundation is not laid, the defense is limited to questioning the Government witness about whether he or she talked to the law enforcement agent, and if so, the defense may ask the witness whether he or she made the statement in question to the Government agent. The defense may not read directly from the law enforcement agent's report.

---

[38] *See, e.g., Bittelman*, 2015 WL 4668035, at *1.
[39] *Id.*
[40] *Id.*

If the necessary foundation is not laid but the witness' testimony is inconsistent with language in the report, the defense may question the agent who made the report about whether the statement was made to him or her.[41] The defense may then impeach the Government witness who allegedly made the statement by the testimony of the agent as to what the witness told him during the investigation. This testimony is admissible not for the truth of the matter asserted but for impeachment purposes.

Upon request, the Court will give a curative instruction to the jury explaining that the agent's testimony should only be considered in assessing the witness' credibility and not for the truth of what the witness purportedly told the agent.

### III. Motion *in Limine* to Exclude Defendants from Informing the Jury of Potential Penalties the Defendants Face or Hardships That Their Convictions May Place Upon Their Families

The Government requests that the Defendants "be instructed not to inform the jury of, or discuss, the potential penalties which the Defendants face if they are convicted at trial, or the hardships their convictions would place upon their families or third parties."[42] The Government argues "these issues are not relevant to the question of the Defendants' guilt or innocence."[43]

Defendant Barnes argues "There is no need for an order, as the defense intends to follow the Federal Rules of Evidence."[44] Defendant Barnes argues "the government's motion is fact and context specific and cannot be granted or denied until attempts are

---

[41] *See United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993) (Not allowing the Defendant to use statements from the investigator's report but stating, "Later in trial, [the defendant] was able to effectively impeach [the witness'] testimony by questioning the FBI agent about inconsistencies between [the witness'] testimony at trial and prior oral statement he made to the agent.").
[42] R. Doc. 702-1, at 5.
[43] *Id.*
[44] R. Doc. 709, at 2.

made at trial to use them."[45] "Frankly," Defendant Barnes adds, "at this point, and unless the government opens the door through its own witnesses and evidence, the defense does not intend to do so."[46]

It is well-established that "the jury [has] no sentencing function and should reach its verdict without regard to what sentence might be imposed."[47] "The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury."[48] "Information regarding the consequence of a verdict is therefore irrelevant to the jury's task."[49]

In *Morad*, the court also excluded "evidence about the personal consequences of a guilty verdict for certain defendants."[50] The court was concerned that one of the defendants may "attempt to introduce evidence that she provides care to her elderly mother and has a child with developmental disabilities."[51] The court found this type of evidence "is not probative of any issue properly before the jury and would instead be an improper plea for sympathy."[52] As the court in *Morad* explained, "Fifth Circuit Pattern Instructions 1.04 and 1.20 tell the jury to completely disregard sympathy, the consequences of the verdict, and potential punishment."[53] As a result, the *Morad* court found that the defendants were "precluded from using this evidence to appeal to the jury's sympathy or seek nullification," and that "such statements would quickly create a risk of

---

[45] *Id.*
[46] *Id.*
[47] *Rogers v. United States*, 422 U.S. 35, 40 (1975).
[48] *Shannon v. United States*, 512 U.S. 573, 579 (1994).
[49] *Id.*
[50] *United States v. Morad, et al.*, No. 2:13-CR-101 (E.D. La. Apr. 27, 2016) (R. Doc. 328, at 9).
[51] *Id.*
[52] *Id.*
[53] *Id.*

unfair prejudice substantially outweighing their probative value."[54] This Court agrees with the reasoning of the trial court judge in *Morad*.

**IT IS ORDERED** that the Government's motion *in limine* to exclude the Defendants from informing the jury of potential penalties they face or the hardships that their convictions may place upon their families or third parties is **GRANTED**.

### IV. <u>Motion *in Limine* to Exclude Defendants from Eliciting Opinion Testimony About A Beneficiary's Qualifications for Home Health Care from Private Investigators or Other Lay Witnesses Who Are Not Qualified to Render Such an Opinion</u>

The Government seeks a motion *in Limine* excluding the Defendants from eliciting opinion testimony about a beneficiary's need for home health care from private investigators or other lay witnesses who are not qualified to render such an opinion.[55] Specifically, "The Government believes that the Defendants may have employed investigators or other third parties to interview or observe Abide patients after the time period of the charged conspiracy."[56] The Government states "Any attempt by the Defendants to elicit testimony from such investigators (or other lay person) regarding observations of beneficiaries long after the relevant time frame is wholly irrelevant and is inadmissible under F.R.E. 602 or 701."[57] The Government adds, "The Potential hazards of admitting such testimony in this case are exacerbated by the fact that the Defendants targeted elderly and disabled Medicare recipients. Given their age and condition, it is possible that their health has declined, or changed materially since the time frame at issue."[58] "Furthermore, the Government argues any testimony about whether a

---

[54] *Id.* (citing FED. R. EVID. 403 and granting the Government's motion).
[55] R. Doc. 702, at 1.
[56] R. Doc. 702-1, at 7.
[57] *Id.*
[58] *Id.* at 8.

beneficiary was medically qualified to receive home health care or whether a beneficiary required skilled nursing services must come from a witness who is qualified to make that assessment."[59] "Lastly, the Government argues any testimony regarding a beneficiary's out-of-court statements to an investigator or other third party constitutes hearsay."[60]

Defendant Barnes argues "There is no need for an order, as the defense intends to follow the Federal Rules of Evidence."[61] Defendant Barnes maintains "the government's motion is fact and context specific and cannot be granted or denied until attempts are made at trial to use them."[62] In addition, Defendant Barnes also requests the Court to "prevent the government from" introducing improper lay testimony.[63]

"Rule 602 states that '[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."[64] The Fifth Circuit has explained that "the hearsay rule and the personal knowledge requirement are cut at least in part from the same cloth."[65] "[A]s the Advisory Committee Notes to Rule 602 acknowledge: 'This rule would, however, prevent [a witness] from testifying to the subject matter of [a] hearsay statement, as he has no personal knowledge of it.'"[66]

An investigator observing the patients in question much later than the time period of the charged conspiracy would not have personal knowledge as to the physical condition or activities of the patients at the time of the alleged fraud. As stated in *United States v.*

---

[59] *Id.*
[60] *Id.*
[61] R. Doc. 709, at 2.
[62] *Id.*
[63] *Id.*
[64] FED. R. EVID. 602.
[65] *United States v. Quezada*, 754 F.2d 1190, 1195 (5th Cir. 1985).
[66] *Id.* (quoting FED. R. EVID. 602 advisory committee's note to the 1972 proposed rules).

*Davis et al.*, "the condition of any beneficiary/patient at a much later date than that material to this case is not relevant."[67] In addition, the Government is correct in its assertion that "any testimony regarding a beneficiary's out-of-court statements to an investigator or other third party constitutes hearsay."[68] As the court in *Henson v. Odyssea Vessels, Inc.* explained, "there is no evidence of a hearsay exception for the eyewitness statement to Defendants, or to the investigators."[69]

The Government argues "any testimony about whether a beneficiary was medically qualified to receive home health care or whether a beneficiary required skilling nursing services must come from a witness who is qualified to make that assessment."[70] The Fifth Circuit has already found that an opinion regarding a patient's medical diagnoses or prognoses "falls within the scope of expert testimony under Rule 702."[71] As a result, the Government's assertion is correct; any testimony about whether a beneficiary was medically qualified to receive home health care or whether a beneficiary required skilled nursing services must come from an expert qualified to make that assessment is correct.

Under Rule 701 of the Federal Rules of Evidence, Defendants will not be allowed to elicit opinion testimony from a private investigator that an individual needed home health care. "The distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'"[72] Rule 701 of the Federal Rules of Evidence allows a non-expert witness to

---

[67] *United States v. Davis et al.*, No. 2:15-CR-155 (E.D. La. Feb. 16, 2016) (R. Doc. 188, at 3).
[68] R. Doc. 702-1, at 8.
[69] *Henson v. Odyssea Vessels, Inc.*, 2008 U.S. Dist. LEXIS 12026, at *17-18 (E.D. La. Feb. 15, 2008).
[70] R. Doc. 702-1, at 8.
[71] *Barnes v. BTN, Inc.*, 2013 WL 1194753, at *2 (S.D. Miss. Mar. 22, 2013), *aff'd*, 555 F. App'x 281 (5th Cir. 2014).
[72] *United States v. Ebron*, 683 F.3d 105, 136-37 (5th Cir. 2012).

testify in the form of an opinion if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[73] "Personal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experience."[74] Stated differently, "A lay opinion must be the product of reasoning processes familiar to the average person in everyday life."[75] Private investigators who are not medical professionals may not provide opinion testimony as to a beneficiary's need for home health care as a lay witness under Rule 701.

IT IS ORDERED that the Government's motion *in limine* to exclude Defendants from eliciting opinion testimony about a beneficiary's qualifications for home health care from private investigators or other lay witnesses who are not qualified as medical professionals to render such an opinion is **GRANTED**. Neither the Government nor any Defendant will be allowed to present evidence that a beneficiary qualified for or needed home health care from a lay witness. Lay witnesses may testify as to their personal observations of the physical activities of the beneficiaries, but not their qualification for or need for home health care at or near the time of the charged conspiracy. At or near the time of the charged conspiracy is defined by the Court as no longer than 90 days after the end of the conspiracy. **IT IS FURTHER ORDERED** that any beneficiary's out-of-court statements to an investigator are excluded as hearsay.

---

[73] FED. R. EVID. 701.
[74] *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999) (citing *United States v. Neal*, 36 F.2d 1190, 1206 (1st Cir. 1994)).
[75] *Id.* (quoting *United States v. Garcia*, 413 F.3d 201, 215 (2d. Cir. 2005)).

## V. **Motion *in Limine* to Exclude Defendants from Eliciting Expert Opinion Testimony About the Defendants' Mental State**

The Government seeks a motion *in Limine* excluding the Defendants from eliciting opinion testimony on the question of whether the Defendants had the requisite mental state to commit the charged offenses.[76] The government "requests that the court prohibit the Defendants from eliciting (1) testimony directly opining on the Defendants' mental states, or (2) the 'functional equivalent of such testimony.'"[77] In addition, the Government requests "that this Court should prohibit the Defendants' experts from testifying that the expert themselves believe that The Doctors complied with Medicare's rules, or that the witness's understanding of Medicare's rules is held broadly within the home health care industry or the medical profession."[78] The Government argues "Such testimony would be the functional equivalent of testifying that The Doctors (as members of those respective groups) believed that their conduct complied with Medicare's rules (and that the defendants therefore lacked the intent to commit the charged offenses)."[79]

Defendant Barnes argues "There is no need for an order, as the defense intends to follow the Federal Rules of Evidence."[80] Defendant Barnes maintains "the government's motion is fact and context specific and cannot be granted or denied until attempts are made at trial to use them."[81]

Federal Rule of Evidence 704(b) provides:

In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that

---

[76] R. Doc. 702-1, at 9.
[77] *Id.* at 10.
[78] *Id.*
[79] *Id.*
[80] R. Doc. 709, at 3.
[81] *Id.*

constitutes an element of the crime charged or a defense. Those matters are for the trier of fact alone.[82]

In *United States v. Gutierrez-Farias*, the Fifth Circuit found expert testimony amounting to a "simple generalization" that "In most drug cases, the person hired to transport the drugs knows the drugs are in the vehicle" is the "functional equivalent" of impermissibly stating the defendant knew he was transporting drugs.[83] The court reasoned the expert's testimony "crosses the borderline long recognized by this court between a 'mere explanation of the expert's analysis of the facts' and a 'forbidden opinion on the 'ultimate legal issue' in the case."[84] As Rule 704(b) and the case-law explain, a party may not elicit testimony directly opining on a defendant's mental state.

Under Rule 704(a), however, opinions on an ultimate issue are not automatically objectionable.[85] As explained by the Fifth Circuit in *Owen v. Kerr-McGee Corp.*, Rule "704 abolishes the per se rule against testimony regarding ultimate issues of fact."[86] "The rule was enacted to change the old view that the giving an opinion an ultimate issue would 'usurp the functions' or 'invade the province' of the jury."[87] The rule, "however, does not open the door to all opinions. The Advisory Committee notes make it clear that questions which merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give *legal* conclusions."[88] The Fifth Circuit recognizes, however, "The task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one." As the Court

---

[82] FED. R. EVID. 704(b).
[83] *United States v. Gutierreaz-Faria*, 294 F.3d 657, 663 (5th Cir. 2002).
[84] *Id.* (citing *United States v. Speer*, 30 FF.3d 605, 610 (5th Cir. 1994); *United States v. Dotson*, 817 F.2d 1127, 1132 (5th Cir. 1987)).
[85] *See* FED. R. EVID. 704(a).
[86] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239 (5th Cir. 1983) (citing *United States v. Grote*, 632 F.2d 387, 390 (5th Cir. 1980)).
[87] *Id.* at 240.
[88] *Id.* (emphasis in original).

explains, "The question, 'Did T have capacity to make a will?' should be excluded."[89] Whereas, the question 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' is permissible."[90] In *Owen*, the Court found the question, "Do you consider that, with your expertise, safe practice?" a permissible question because it "[d]irectly addressed to whether [the plaintiff] was following proper practices" and "seeks a factual, not a legal conclusion."[91]

This case requires that the jury be informed of Medicare's standards and practices with respect to home health care services. A qualified expert may testify regarding an industry's custom or practices so long as the testimony does not cross "into the realm of making legal conclusions."[92] Other cases within this circuit have allowed expert testimony of this sort. "[C]ourts have permitted experts to testify about the workings of Medicare systems, because the complexity of the regulations takes them beyond the ordinary understanding of jurors."[93] Furthermore, in *United States v. Turner*, the government's Medicare expert was allowed to testify that "Medicare does not pay claims associated with services provided to beneficiaries who are obtained as patients through the provider's use of kickbacks or bribes."[94] Similarly, in *United States v. Palazzo*, "A Medicare expert presented by the Government testified at trial" that certain meetings "could not be given

---

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *See McDermott Intern., Inc. v. Industrial Risk Insurers*, 2003 WL 25755910, at *1 (E.D. La. Nov. 12, 2003) (allowing an expert testimony on customs and practices of the insurance industry but limiting the expert from making legal conclusions concerning the defendant's compliance with legal duties arising from those customs and practices).

[93] *United States ex rel. Ruscher v. Omnicare, Inc.*, 2015 WL 5178074, at *9 (S.D. Tex. Sept. 3, 2015) (citing *United States v. Abdallah*, 5629 F. Supp. 2d 699, 750 (S.D. Tex. 2009) (expert testimony regarding the Medicare payment system can help the jury understand the rules and regulations under which claims were submitted)).

[94] *United States v. Turner*, 620 F. App'x 249, 252 (5th Cir. 2015).

an E&M code because there were no face-to-face meetings with patients as the codes require."[95]

In *Davis*, this district recently faced a similar issue. In *Davis*, both defendants and the government filed motions *in limine* to limit the testimony of the respective parties' expert witnesses.[96] Specifically, the defendants in *Davis* argued the government's expert should not give expert witness testimony on the law because it is solely within the Court's province to instruct the jury on the law.[97] In their motion, the defendants in *Davis* included testimony given by the government's witness in *Morad* that the defendants believed improperly crossed the line between fact and law.[98] In reviewing the transcript of the testimony made by the government's witness in *Morad*, the *Davis* court found "nothing objectionable on an evidentiary basis."[99] As the court explained, the expert's "testimony relates to common practices and procedures, as she understands them *in her specific capacity and based on her training*, and this was made apparent to the jury."[100] The *Davis* court added, "To the extent Defendants claim [the government's witness] was reciting law or providing a legal opinion, such does not seem the case nor did Judge Vance provide a limiting instruction, which she easily could have if warranted."[101] Ultimately, the court in *Davis* denied the motions *in limine* submitted by both the government and the defendants.[102] The court in *Davis*, however, provided words of caution:

> In permitting these witnesses to testify, the Court reminds counsel that the utmost of care is expected that they not elicit testimony calling for a legal conclusion or opinion about Medicare law or any regulations. In other

[95] *United States v. Palazzo*, 372 F. App'x 445, 447 (5th Cir. 2010).
[96] *United States v. Davis et al.*, No. 2:15-CR-155 (E.D. La. Jan. 29, 2016) (R. Docs. 153; 156).
[97] *United States v. Davis et al.*, No. 2:15-CR-155 (E.D. La. Jan. 29, 2016) (R. Doc. 153-1, at 10).
[98] *See id.* at 10-18. In *Morad*, the testimony of the government's expert was admitted without objection. *See, id.* at 10 n.6.
[99] *United States v. Davis et al.*, No. 2:15-CR-155 (E.D. La. Feb. 24, 2016) (R. Doc. 218, at 3).
[100] *Id.* (emphasis in original).
[101] *Id.*
[102] *See id.*

> words, each of these witnesses will not be allowed to state dispositively
> what the law is, and that certain actions are 'illegal.' Neither witness has
> any background 'interpreting' legal requirements or Medicare guidelines;
> rather they can describe the practices and procedures with which they are
> familiar with which they believe comport with Medicare's guidelines. To
> the extent a limiting instruction is appropriate, the Court urges all counsel
> confer and prepare a mutually agreeable instruction which can be read by
> the undersigned to the jury if and when appropriate, indicating that the
> witness is not an expert in the law and the jury should not accept any
> testimony as correct statements or opinions of what the law is.[103]

This Court finds the reasoning of *Davis* to be correct and the precautionary words to the

parties to be sound advice.

     **IT IS ORDERED** that the Government's motion *in limine* to exclude expert

opinion testimony as to the Defendants' mental state is **GRANTED IN PART** and

**DENIED IN PART**. The Government's motion is **GRANTED** to the extent it seeks to

preclude the introduction of expert testimony directly, or the "functional equivalent,"

opining on the Defendants' mental state. The Government's motion is also **GRANTED**

with respect to its request that the Court prohibit experts from testifying that the experts

themselves believe the Defendants complied with Medicare's rules. The Government's

motion is **DENIED** to the extent it requests that the Court exclude experts from testifying

about practices and procedures with which they are familiar and which they believe

comport with Medicare's guidelines.

     To the extent a limiting instruction is appropriate, the Court urges all counsel

confer and request, if necessary, a mutually agreeable instruction which can be read by

the undersigned to the jury, if and when appropriate, informing the jury that the witness

is not an expert in the law and the jury should not accept any testimony as correct

statements or opinions of what the law is.

---

[103] *Id.* at 4-5.

## VI. Motion *in Limine* to Exclude Defendants' Witnesses From Offering Testimony Regarding the Anti-Kickback Statute, or Opining on Whether Defendants Complied With That Statute

The Government seeks a motion *in limine* to preclude the Defendants from offering expert testimony that it was lawful for Abide to make payments to patient "recruiters," "marketers," and/or nurses in exchange for referring Medicare beneficiaries to Abide.[104] The Government argues that the "Defendants should not be allowed to offer testimony instructing the jury on the provisions of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ('AKS') or the regulatory 'safe harbors' relating to payment for covered services, *e.g.* 42 C.F.R. § 1001.952(i)."[105] The Government argues, "Courts routinely exclude such testimony, reasoning that it is the province of a judge to instruct the jury as to what the law is."[106] In addition, the Government maintains "Defendants' experts should not be permitted to opine on the applicability of the AKS to the conduct in this case or render a conclusion about the legality of the Defendants' conduct."[107]

Defendant Barnes argues "the government has taken the position that it is acceptable for its witness to opine as to the law, while any similar witness for the defense cannot. The defendant suggests that this request be denied as premature, at a minimum, as all instructions as to the law must come from the Court, not a witness."[108]

As discussed in the previous section, this case requires that the jury be informed of Medicare's standards and practices with respect to home health care services. A qualified expert may testify regarding an industry's custom or practices so long as the testimony

---

[104] R. Doc. 7-21, at 10.
[105] *Id.* at 11.
[106] *Id.* (citing *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)).
[107] *Id.* at 12 (citing *United States v. Tucker*, 345 F.3d 320, 331 (5th Cir. 2003)).
[108] R. Doc. 709, at 3 (referencing *United States v. Davis et al.*, No. 2:15-CR-155 (E.D. La. Feb. 16, 2016) (R. Docs. 188)).

does not cross "into the realm of making legal conclusions."[109] In other words, neither the witnesses of the Government nor any Defendant will be allowed to state dispositively what the law is or that certain actions are illegal.

**IT IS ORDERED** that the Government's motion is **GRANTED** with respect to its request that the Court prohibit experts from testifying that the experts themselves believe it was lawful for Abide to make payments in exchange for referrals. The Government's motion is **DENIED** to the extent it requests that the Court exclude experts from testifying about practices and procedures with which they are familiar and which they believe do not violate the Anti-Kickback Statute.[110]

To the extent a limiting instruction is appropriate, the Court urges all counsel confer and request if necessary a mutually agreeable instruction which can be read by the undersigned to the jury if and when appropriate, indicating that the witness is not an expert in the law and the jury should not accept any testimony as correct statements or opinions of what the law is.

### VII.     Motion *in Limine* to Preclude Defendants From Referring to Legal Advice Unless They Waive Privilege and Show they Satisfy the Criteria

The Government seeks a motion *in limine* precluding the Defendants from referring to legal advice unless the Defendants waive their attorney-client privilege and show they satisfy the criteria for an advice of counsel defense.[111] The Government argues, "the Defendants have not produced any discovery whatsoever, let alone any discovery to show that, prior to engaging in the charged conduct, they provided a full and accurate

---

[109] *See McDermott Intern., Inc.*, 2003 WL 25755910, at *1.
[110] 42 U.S.C. § 1320a-7b(b) or the regulatory 'safe harbors' relating to payment for covered services, e.g. 42 C.F.R. § 1001.952(i).
[111] R. Doc. 702-1, at 12.

report of the material facts to legal counsel and then received and strictly followed legal advice about the statutes in question."[112] The Government maintains that "If the Defendants intend to claim that they received contemporaneous advice about their conduct, they must disclose any such communications they had with counsel."[113] In addition, the Government argues, "Because the Defendants have not waived privilege by disclosing communications with counsel, they should be precluded from asserting this affirmative defense."[114] The Government "requests that the Court order the Defendants to promptly disclose their intent to invoke this defense, so that a hearing can take place before trial."[115] Finally, the Government argues, "Unless the Defendants establish that they can meet the specific requirements of the advice of counsel defense, they should be prohibited from referring to or alluding to any legal advice regarding the charged conduc[t]."[116]

Dr. Barnes responds, "The Government is well aware that the defense of Dr. Barnes has never suggested or implied that he intends to present a reliance defense," and therefore requests that this motion be denied.[117] No other Defendant has indicated an intent to use a reliance defense.

The Government cites *United States v. Newell* for the argument that "reliance upon advice of counsel is an affirmative defense."[118] Affirmative defenses, such as duress, place a burden on the defendant to provide evidence of each of the elements of the defense

---

[112] *Id.* at 14.
[113] *Id.*
[114] *Id.*
[115] *Id.* at 14-15.
[116] *Id.* at 15.
[117] R. Doc. 709, at 4.
[118] R. Doc. 702-1, at 12 (citing *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002)).

before it may be presented to the jury.[119] In *Newell*, the Fifth Circuit quoted *United States v. White*, a case out of the D.C. Circuit. The court in *White* faced the same issue of whether or not a defendant waives the attorney-client privilege when he or she asserts a good faith defense.[120] In *White* the D.C. Circuit held, "The district court apparently equated White's denial of criminal intent with a reliance-on-advice-of-counsel defense, which would have waived the privilege. Reliance on advice of counsel is an affirmative defense, an assertion more positive and specific than a general denial of criminal intent."[121]

After reviewing the opinion in *Newell*, it is clear to this Court that the Fifth Circuit did not adopt the D.C. Circuit's interpretation that reliance on advice-of-counsel is an affirmative defense. Instead, the Fifth Circuit, in quoting *White*, merely adopted that court's reasoning that there is a difference between a good faith defense and a reliance on advice of counsel defense because the introduction of a good faith defense does not waive attorney-client privilege.[122] In addition, the Fifth Circuit has stated, "Strictly speaking, good faith reliance on advice of counsel is not really a defense to an allegation of fraud but is the basis for a jury instruction on whether or not the defendant possessed the requisite specific intent."[123]

The Government's assertion that a defendant who raises a reliance on advice of counsel defense waives his or her attorney-client privilege is correct. "Where a party asserts reliance on advice of counsel as an essential element of his defense, that party waives the attorney-client privilege with respect to all communications, whether written

---

[119] *United States v. DeLeon*, 565 F.App'x 297, 302 (5th Cir. 2014).
[120] *Newell*, 315 F.3d at 525 (citing *United States v. White*, 887 F.2d 267, 270 (D.C.Cir. 1989)).
[121] *Id.* (quoting *White*, 887 F.2d at 270).
[122] *Id.* ("We similarly find merit in Gianakos's contention that she did not waive her attorney-client privilege by asserting good faith as a defense.").
[123] *United States v. Carr*, 740 F.2d 339, 346 n.11 (5th Cir. 1984).

or oral, to or from counsel concerning the transaction for which counsel's advice was sought."[124] "The defendant," however, "must voluntarily assert this defense for the waiver to apply."[125]

In *United States v. Espy*, another court in this district denied the government's motion to compel notice of intent to rely on defense of advice of counsel.[126] The court found "there is no caselaw to support [the government's] proposition that a defendant must notify the government if he intends to rely on the advice of counsel defense."[127] Other courts within this circuit have found "it would be unfair to preclude the Defendant from offering at trial evidence of its advice-of-counsel defense simply because the Plaintiff did not obtain information about that defense during discovery."[128] In addition, the "advice-of-counsel" defense is not one of the defenses, objections, or requests that must be raised before trial under Rule 12(b)(3) of the Federal Rules of Criminal Procedure.[129] As a result, the Court will not preclude the Defendants from raising the defense solely because the Defendants have not  thus far notified the Government of their intent to raise the defense and have not waived their attorney-client privilege.

Courts within this district have found that "if legal opinion evidence is used to establish the defense of honest reliance on the advice of counsel, special issues of relevance arise. These issues involve whether the legal opinion actually addressed the crimes alleged here, and further whether the advice of counsel defense negates the

---

[124] *In re Taxable Mun. Bond. Sec. Litig.*, 1993 WL 323069, at *3 (E.D. La. Aug. 18, 1993) (citing *Ward v. Succession of Freeman*, 854 F.2d 780, 787-88 (5th Cir. 1988)).
[125] *Id.* (citing *Ward*, 854 F.2d at 788).
[126] *United States v. Espy*, 1996 WL 560354 (E.D. La. Oct. 2, 1996).
[127] *Id.* at *1.
[128] *Texas Advanced Optoelectronic Sols., Inc. v. Intersil Corp.*, 2015 WL 11181563, at *1 (E.D. Tex. Feb. 9, 2015).
[129] *See* FED. R. CRIM. P. 12(b)(3).

relevant *mens rea* of the crimes alleged in the indictment."[130] The court in *Impastato* ordered, "Should the Defendant seek to put forth the defense of reliance on the advice of counsel, the Court will require briefing on the issue of the availability of this defense prior to trial."[131] In addition, in *Ward*, the plaintiff filed a motion in limine to "preclude defendants' witnesses from referring to advice of counsel without prior leave of court."[132] The court granted the plaintiff's motion and stated, "This order is limited to questions by the defense which would raise the advice of counsel defense and thus cause the defense to waive their privileges."[133] The Court finds it to be in the interest of justice to address this issue pre-trial in the event any Defendant intends to raise advice of counsel as a defense.

Any Defendant who wishes to put forth the defense of reliance on the advice of counsel must file a motion on or before **March 1, 2017** at **5:00 p.m.** establishing his right to invoke the advice of counsel defense and requesting that the Court hold an evidentiary hearing if necessary.

The Court defers ruling on this motion.

### VIII.   Motion *in Limine* to Preclude Defendants From Commenting on the Number of Beneficiaries the Government Highlights at Trial

The Government requests that the Defendants be precluded from arguing the Government has offered too few beneficiary examples.[134] The Government argues:

> In multiple status conferences and at the September 6, 2016 evidentiary hearing, the Defendants strenuously argued that the Government should be required to disclose a finite list of patients that it will focus on well in advance of trial. Some Defendants have also requested that the Government be restricted to this list at trial. The Defendants have argued that this list is

---

[130] *United States v. Impastato*, 535 F. Supp. 2d 732, 740 (E.D. La. 2008).
[131] *Id.*
[132] *Ward v. Succession of Freeman*, 1990 WL 170303, at *2 (E.D. La. Oct. 29, 1990).
[133] *Id.*
[134] R. Doc. 702-1, at 15.

necessary to allow them to prepare for trial and to prevent the trial from being too lengthy. In other words, this proposed restriction on the Government's evidence is in no way due to a lack of evidence on the Government's part. On the contrary, the Defendants' arguments have been premised on a concern that the Government would present *too much* evidence.[135]

The Government argues, "Fundamental fairness dictates that, after making representations to the Court about the voluminous beneficiary evidence, the Defendants not be permitted to change course at trial and argue that the Government was only able to identify a small number of beneficiaries."[136]

Defendant Barnes opposes this motion and states, "The government cites not one authority for this portion of its motion, as none exist."[137]

To the extent the Defendants attempt to reference, or introduce records of, specific patients that were correctly billed, the Court has already determined that such evidence is irrelevant under Rule 405.[138] In addition, the Court agrees with the Government's assertion, "As with the attorney-client privilege, the beneficiary lists should not be utilized as both a sword and shield by the defense."[139] Rule 403 of the Federal Rules of Evidence provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needless presenting cumulative evidence."[140] The Fifth Circuit has cautioned "because it permits a trial court to exclude

---

[135] *Id.*
[136] R. Doc. 738, at 3.
[137] R. Doc. 709, at 4.
[138] *See* R. Doc. 725 (granting the Government's motion to exclude specific instances of proper billing).
[139] R. Doc. 702-1.
[140] FED. R. EVID. 403.

concededly probative evidence, Rule 403 is an extraordinary remedy which should be used sparingly."[141] As the Fifth Circuit noted in *United States v. McRae*:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 is meant to relax the iron rule of relevance, to permit the trial judge to preserve the fairness of the proceedings by exclusion despite its relevance.[142]

Although the rule is to be used sparingly, "A district court has broad discretion in assessing admissibility under Rule 403."[143]

In the present case, the Court finds that the probative value of any argument by the Defendants that the Government has offered too few beneficiary examples is substantially outweighed by the risk of undue prejudice under Rule 403.

As explained by the Supreme Court, "Rule 403's term 'unfair prejudice' speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt," or innocence in this matter, "on an improper basis."[144] In addition, the Committee Notes to Rule 403 explain, "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[145] The Defendants have made numerous requests that the Court restrict the number of patients with respect to which the Government may introduce medical records at trial. Understanding the Defendants' concerns, the Court issued an order directing the Government "to, for each Defendant, identify on the record the individual patients with respect to whom the Government intends to use and introduce medical

---

[141] *United States v. Thevis*, 665 F.2d 616, 633 (5th Cir. 1982).
[142] *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).
[143] *United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996).
[144] *Old Chief v. United States*, 519 U.S. 172, 180 (1997).
[145] FED. R. EVID. 403 advisory committee's note to the 1972 proposed rules.

records at trial."[146] The Government timely produced its list on September 21, 2016.[147] Over objections, the Court has allowed the Government to introduce medical records to the patients in the September 21, 2016 disclosure. Some Defendants have requested that the court limit the number of beneficiaries even further. It would be unfairly prejudicial to allow the Defendants to disparage the Government's case by references to the number of patients whose medical records are presented at trial.

Furthermore, any attempt by the Defendants to allude to the number of patients highlighted by the Government at trial as "small" would also lead to a confusion of the issues and mislead the jury. At trial, the issue before the Jury will be whether or not the Defendants are guilty of the crimes charged in the Second Superseding Indictment. As the Court has already explained in a previous order, the guilt or innocence of the Defendants will not turn on whether or not the Defendants committed a large number of instances of fraud, or whether or not the Defendants properly billed almost all of the time.[148] The Court finds that any possible probative value of the introduction of evidence by the Defendants with respect to the number of beneficiaries for whom the Government will introduce medical records at trial is substantially outweighed by a danger of confusion of the issues or misleading the jury.

Finally, the Defendants have frequently based their argument for limiting the Government to a select number of patients on the premise that requiring the parties to prepare for trial on an unlimited number of beneficiaries would cause undue delay and would be a waste of time. The Court agreed and granted the Defendants' request with the

---

[146] R. Doc. 666, at 2.
[147] R. Doc. 718-1.
[148] *See* R. Doc. 725 (granting the Government's motion to preclude introduction of "good acts" of the Defendants, including evidence of proper billing, as it is irrelevant to the crimes charged).

understanding that it would be a needless presentation of cumulative evidence to allow the Government to introduce patient records from an unlimited list of patients.

**IT IS ORDERED** that the Government's motion *in limine* to preclude Defendants from commenting on the number of beneficiaries the Government highlights at trial is hereby **GRANTED**.

### IX. <u>Motion *in Limine* to Prohibit Arguments Regarding Prosecutorial Motives</u>

The Government "moves, as a precautionary measure, to exclude any and all evidence, references or inferences regarding the imagined motivation of the prosecution, including racial or political motives."[149] The Government argues, "Such questioning of the Government's motives is a form of claiming selective prosecution, which must be decided by the Court, not the jury."[150]

Defendant Barnes opposes the Government's motion and states, "The defense will not engage in a display of its trial strategy and arguments. On the other hand, if the government is aware of improper prosecutorial motives on its own part, they must be disclosed."[151]

The Government is correct in its assertion that "Arguments regarding selective prosecution must be raised with the Court before trial and should not be presented to the jury."[152] Rule 12(b)(3)(A) of the Federal Rules of Criminal Procedure states:

(3) **Motions That Must Be Raised Before Trial**: The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without trial on the merits:

(A) a defect in instituting the prosecution, including:

---

[149] R. Doc. 702-1, at 16.
[150] *Id.*
[151] R. Doc. 709, at 4.
[152] R. Doc. 702-1, at 16.

(iv) selective or vindictive prosecution.[153]

Rule 12(c)(3) states, "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause."[154]

A claim of selective or vindictive prosecution is "ultimately separate from the issue of [a defendant's] factual guilt."[155] As the Supreme Court has found, a "selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."[156] "Charges of selective prosecution are matters for the court and should not be mentioned in the presence of the jury."[157] Similarly, in *United States v. Cleveland*, the court excluded evidence introduced for the purpose of showing improper prosecutorial motive under Rule 403 of the Federal Rules of Evidence.[158] The Court found "that evidence concerning the motivation of the prosecution of any of the defendants is irrelevant to the issue of innocence or guilt and that any probative value it has is substantially outweighed by its potential for unfair prejudice and for misleading the jury."[159]

In *Impastato*, the government filed a similar motion to preclude the Defendant from introducing evidence or testimony that would support a defense of selective prosecution.[160] The government believed the defendant would attempt to "claim that

---

[153] *See* FED. R. CRIM. P. 12(b)(3)(A).
[154] *Id.* at 12(c)(3).
[155] *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997).
[156] *United States v. Armstrong*, 517 U.S. 456, 463 (1996).
[157] *United States v. Fontenot*, 2010 WL 4056194, at *1 (M.D. La. Oct. 14, 2010) (citing *Regan*, 103 F.3d at 1082).
[158] *United States v. Cleveland*, 1997 WL 253124, at *3 (E.D. La. May 14, 1997).
[159] *Id.*
[160] *United States v. Impastato*, 2007 WL 2463310, at *5 (E.D. La. Aug. 28, 2007).

other politicians were involved in similar public contracts following Hurricane Katrina and, to date, none have been indicted."[161] The defendant did not oppose the exclusion of evidence as it relates to a defense of selective prosecution, but instead stated such an exclusion would "unconstitutionally infringe on Mr. Impastato's right to establish that his conduct was legal and to present a defense to the Government's allegations asserting otherwise."[162] The court granted the government's motion as it pertained to evidence of selective prosecution, but stated:

> [T]his motion is granted with the caveat that any evidence that could arguably fall within the ambit of this ruling should be brought to the Court's attention at a bench conference prior to its offering. At this time, Defendant will have the opportunity to convince the Court that the evidence to be offered is admissible, relevant, and will not prejudice the jury by raising an inference of selective prosecution.[163]

The Court agrees with the ruling in *Impastato*. Defendants will be precluded from raising the issue of selective prosecution unless the offering party brings the evidence to the Court's attention at a bench conference prior to its offering, at which time the offering Defendant must convince the Court that the evidence is admissible, relevant and will not prejudice the jury.

The Court defers ruling on this motion.

---

[161] *Id.*
[162] *Id.*
[163] *Id.*

## CONCLUSION

For the foregoing reasons, the Government's motion is **GRANTED IN PART** and **DENIED IN PART**.

Defendants may not:

I.   Elicit testimony regarding self-serving hearsay statements the Defendants made to third parties;

II.  Quote directly from a law enforcement agent's interview report to impeach a Government witness before requesting an evidentiary hearing prior to trial to establish a proper foundation for the extrinsic evidence under Federal Rule of Evidence 613. If the proper foundation is established that the report was signed or adopted by the witness or is a verbatim report of the witness interview, statements in the agent's report may be used during cross-examination of the witness who allegedly made the statements for the purposes of impeachment. If the proper foundation is not laid, the defense is limited to questioning the Government witness about whether he or she talked to the law enforcement agent, and if so, the defense may ask the witness whether he or she made the statement in question to the Government agent. The defense may not read directly from the law enforcement agent's report. If the necessary foundation is not laid but the witness' testimony is inconsistent with language in the agent's interview report, the defense may then question the agent who made the report about whether a statement was made to him or her. The defense may then impeach the Government witness who allegedly made the statement by the testimony

of the agent as to what the witness told him during the investigation. This testimony is admissible not for the truth of the matter asserted but for impeachment purposes. Upon request, the Court will give a curative instruction to the jury explaining that the agent's testimony should only be considered in assessing the witness' credibility and not for the truth of what the witness purportedly told the agent.

III.   Inform the jury of potential penalties the Defendants face or hardships that their convictions may place upon their families;

IV.   Elicit opinion testimony about a beneficiary's medical qualifications for home health care from private investigators who are not medical professionals or other lay witnesses who are not qualified to render such an opinion. Lay witnesses may testify as to their personal observations of the physical activities of the beneficiaries at or near the time of the conspiracy, defined as no later than ninety days after the end of the conspiracy. Defendants may not introduce any beneficiary's out-of-court statements made to an investigator.

V.   Introduce expert testimony directly, or the "functional equivalent," opining on a Defendant's mental state. Defendants may not introduce expert testimony that the experts themselves believe the Defendants complied with Medicare's rules. Defendants will be allowed, however, to introduce expert testimony about practices and procedures with which the expert is familiar with and they believe comport with Medicare's guidelines. To the extent a limiting instruction is appropriate, the Court urges all counsel confer and request, if necessary, a mutually agreeable

instruction which can be read by the undersigned to the jury, if and when appropriate, informing the jury that the witness is not an expert in the law and the jury should not accept any testimony as correct statements or opinions of what the law is.

VI.    Introduce expert testimony that the experts themselves believe it was lawful for Abide to make payments in exchange for referrals. Defendants will be allowed, however, to introduce expert testimony about practices and procedures with which the expert is familiar with and they believe do not violate the Anti-Kickback Statute.[164] To the extent a limiting instruction is appropriate, the Court urges all counsel confer and request, if necessary, a mutually agreeable instruction which can be read by the undersigned to the jury, if and when appropriate, informing the jury that the witness is not an expert in the law and the jury should not accept any testimony as correct statements or opinions of what the law is.

VII.   Put forth a defense of reliance on counsel without first filing a motion establishing his right to invoke the defense of reliance on advice of counsel and requesting that the Court hold an evidentiary hearing, if necessary. The deadline for filing this motion is **March 1, 2017** at **5:00 p.m.**

VIII.  Comment on the number of beneficiaries with respect to which the Government introduces medical records at trial;

---

[164] 42 U.S.C. § 1320a-7b(b) or the regulatory 'safe harbors' relating to payment for covered services, e.g. 42 C.F.R. § 1001.952(i).

IX.   Raise the issue of selective prosecution without bringing the evidence to the Court's attention at a bench conference prior to its offering, at which time the offering Defendant must convince the Court that the evidence is admissible, relevant and will not prejudice the jury.

**New Orleans, Louisiana, this 1st day of November, 2016.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**