UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | No. 15-61 |
| LISA CRINEL, ET AL. | SECTION "E" (5) |

## ORDER AND REASONS

Before the Court is the Motion for Forfeiture of Property filed by the United States.[1] Defendant Henry Evans opposes this motion.[2] For the reasons that follow, the Court **ORDERS** that the motion is **GRANTED IN PART** to the extent that Evans is required to forfeit $13,137.97, which represents payments received from his Medicare Part B billings after he began participating in the health care fraud scheme for which he was convicted.

## BACKGROUND

In the Second Superseding Indictment, Defendant Henry Evans was charged with Count 1 (Conspiracy to Commit Health Care Fraud pursuant to 18 U.S.C. § 1349), Count 2 (Conspiracy to Receive and Pay Illegal Health Care Kickbacks pursuant to 18 U.S.C. § 371), and Counts 28–31 and 43–46 (Health Care Fraud pursuant to 18 U.S.C. § 1347, 2).[3] This Court held a jury trial beginning on April 11, 2017.[4] At trial, the United States introduced without objection Exhibit 245, containing billing data,[5] and Exhibit 1422, separating billing data for Evans' Medicare Part B billings from November 1, 2008 to May

---

[1] R. Doc. 1317.
[2] R. Doc. 1321.
[3] R. Doc. 670.
[4] R. Doc. 1010.
[5] R. Doc. 1011.

1

1, 2014.⁶ On May 9, 2017, the jury found Defendant Evans guilty of the health care fraud offenses charged in Counts 31 and 43–46.⁷

Count 1 of the Second Superseding Indictment, for which Evans was charged but not convicted, charges that Evans was paid $26,708.49 for fraudulent claims to Medicare Part B.⁸ The United States explains it calculated this figure from the amounts Medicare Part B paid Evans for claims he made "[f]rom about January 1, 2009[ ] through on or about June 20, 2014" under Healthcare Common Procedure Coding System ("HCPCS") Codes G0179, G0180, and G0181.⁹ Paragraph 59 of the Second Superseding Indictment, relating to Counts 3–47, "reallege[s] and incorporate[s] by reference" the paragraph stating Evans was paid $26,708.49 for Part B billing.¹⁰ Paragraph 60 also charges Evans and the other Defendants with "knowingly and willfully execut[ing] and attempt[ing] to execute a scheme and artifice to defraud Medicare and to obtain [funding] by means of false and fraudulent pretenses, representations, and promises."¹¹

On September 28, 2017, the United States filed the instant motion.¹² The United States moves the Court to enter an order of forfeiture against Defendant Evans "in the amount of $26,708.49, representing payments that Evans received from his fraudulent Medicare Part B billings" with respect to patients Jessie Johnson (Counts 27, 29), Joyce

---

⁶ R. Doc. 1047.
⁷ R. Doc. 1067.
⁸ R. Doc. 670 at 10, ¶ 35.
⁹ *Id*. HCPCS Code G0170 deals with re-certification for Medicare-covered home health services, G0180 with certification for Medicare-covered home health services), and G0181 with supervision of a patient receiving Medicare-covered services provided by a participating home health agency. *See* Ex. 1422.
¹⁰ R. Doc. 670 at 17, ¶ 59.
¹¹ *Id*. at ¶ 60.
¹² R. Doc. 1317.

Williams (Counts 30 and 31), and Marion Grace (Counts 43–46).[13] Evans opposed on October 6, 2017.[14] He argues the amount for which the United States moves is incorrect.

**LAW AND ANALYSIS**

   I.   **Because Evans participated in a health care fraud scheme, he can be required to forfeit all proceeds traceable to the scheme, even if the particular execution of the scheme was not charged in the indictment, or he was acquitted of the charge.**

Rule 32.2(b)(1) of the Federal Rules of Criminal Procedure requires courts considering motions for forfeiture to determine the property "subject to forfeiture under the applicable statute . . . based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable."[15] The Court's determination is based on the preponderance of the evidence.[16] "[T]he calculation of the actual loss amount is a finding of fact, which 'the district court receives wide latitude to determine[,] and it should make a reasonable estimate based on available information.'"[17]

18 U.S.C. § 982(a)(7), the applicable statute in this case, requires the forfeiture of "property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense."[18] The meaning of "proceeds" in

---

[13] *Id.* at 3, ¶ 7.
[14] R. Doc. 1321.
[15] FED. R. CRIM. P. 32.2(b)(1). The rule requires courts to conduct a hearing on the issue "on either party's request." *Id.* at 32.2(b)(1)(B). No party has requested a hearing on the issue of forfeiture. The rule does not contemplate permitting testimony on the issue at a sentencing hearing, as counsel for Evans has requested, R. Doc. 1502.
[16] *See United States v. Ayika*, 837 F.3d 460, 467 (5th Cir. 2016) ("[T]he Government had to show, by a preponderance of the evidence, only that the actual loss amount was a 'reasonably foreseeable pecuniary harm that resulted from the [the healthcare fraud].'") (citing U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. n. 3(A)(i)); *United States v. Gasanova*, 332 F.3d 297, 301 (5th Cir. 2003) ("[S]tatutorily-prescribed forfeiture is warranted upon a showing of a preponderance of the evidence.").
[17] *Id.* (citing *United States v. Jones*, 475 F.3d 701, 705 (5th Cir. 2007)) (internal alterations omitted).
[18] 18 U.S.C. § 982(a)(7).

health care fraud schemes is "not limited to the net gain or profit realized from the offense."[19]

Evans argues that, because he was not convicted of conspiracy in Count 1, he cannot be required to forfeit any amount not specifically charged in Counts 31 and 43–46, which charge individual acts of health care fraud and participation in a scheme to defraud Medicare.[20] The Fifth Circuit has not addressed the limits of forfeiture resulting from participation in a scheme. The circuit courts considering the question have concluded that the broad language of the federal statutory provisions governing forfeiture permits courts to require defendants to forfeit all property traceable to a scheme, so long as the assets have the requisite nexus to the scheme, even if the particular execution of the scheme was not charged or the defendant was acquitted.[21] This Court agrees.

In *United States v. Venturella*, defendants charged with participating in a mail fraud scheme pleaded guilty to one count of mail fraud for $477.90.[22] The indictment included a chart specifying the mailings corresponding to each count in the mail fraud scheme and included a forfeiture charge of $114,313 for the scheme.[23] The district court

---

[19] *Id.* at § 981(a)(2)(A). § 981 deals with civil forfeiture, but 28 U.S.C. § 2461 permits forfeiture in a criminal case "for a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized." 28 U.S.C. § 2461(c).
[20] R. Doc. 1321.
[21] *United States v. Cox*, 851 F.3d 113, 128 (1st Cir. 2017) ("[I]n the case of crimes that involve a scheme to defraud, funds obtained . . . as a result of the offense consist of the funds involved in that fraudulent scheme, including additional executions of the scheme that were not specifically charged or on which the defendant was acquitted.) (citation and internal quotation marks omitted); *United States v. Lo*, 839 F.3d 777, 793 (9th Cir. 2016) ("Because the proceeds from a mail fraud or wire fraud offense include funds obtained 'as the result of the commission of the offense,' and the commission of such a mail fraud or wire fraud offense necessarily includes a fraudulent scheme as a whole, the proceeds of the crime of conviction consist of the funds involved in that fraudulent scheme, including additional executions of the scheme that were not specifically charged or on which the defendant was acquitted."); *United States v. Venturella*, 585 F.3d, 1013, 1017 (7th Cir. 2009) ("[F]orfeiture is not limited solely to the amounts alleged in the count(s) of conviction."); *United States v. Capoccia*, 503 F.3d 103, 117–18 (2d Cir. 2007) (Sotomayor, J.) ("Where the conviction itself is for executing a scheme, engaging in a conspiracy, or conducting a racketeering enterprise, the government need only establish that the forfeited assets have the 'requisite nexus' to that scheme, conspiracy, or enterprise.'") (citing FED. R. CRIM. P. 32.2(b)(1)).
[22] 585 F.3d at 1016.
[23] *Id.* at 1016, 1017.

issued a forfeiture judgment of $114,313 against them, which the defendants argued was excessive because they had only pleaded guilty to one count, with a value of $477.90.[24] The Seventh Circuit upheld the forfeiture order.[25] It noted the defendants "pleaded guilty to one count of mail fraud that also alleged a fraudulent scheme, and the amount of the mailing, by itself, does not adequately account for the proceeds obtained from their crime of conviction."[26] The court held "forfeiture is not limited solely to the amounts alleged in the count(s) of conviction."[27]

In this case, Evans is correct that he was not convicted of Count 1 of the Second Superseding Indictment, which charged that Evans conspired to commit health care fraud.[28] However, the charge that Evans committed health care fraud and was paid for fraudulent Medicare billings is realleged and reincorporated by reference in Paragraph 59 of the Second Superseding Indictment, which relates to all the counts of health care fraud of which Evans was convicted.[29] The Court notes Paragraph 60 of the Second Superseding Indictment, which also relates to counts of which Evans was convicted, charges Evans with executing a scheme to defraud Medicare.[30]

Similar to the indictment in *Venturella*, each of Counts 3–46 of the Second Superseding Indictment charges an individual Medicare payment that was part of a fraudulent scheme.[31] The jury, in convicting Evans, found *beyond a reasonable doubt* he participated in the scheme and received the individual payments associated with Counts

---

[24] *Id.* at 1016.
[25] *Id.*
[26] *Id.* at 1017.
[27] *Id.*
[28] R. Doc. 670 at 10, ¶ 35.
[29] R. Doc. 1338.
[30] R. Doc. 670 at 17, ¶ 60.
[31] *Id.* at 30–32.

5

31 and 43–46.³² The amounts of the individual fraudulent payments associated with Counts 31 and 43–46 do not, by themselves, adequately account for the proceeds obtained from Evans' participation in the scheme. All of Evans' Medicare Part B billings after he became a member of the scheme are proceeds traceable to his participation in the health care fraud scheme.

Evans relies on *United States v. Garcia-Guizar*,³³ in which the Ninth Circuit vacated a criminal forfeiture order of $43,070.³⁴ As the Seventh Circuit noted in *Venturella*, "nothing in *Garcia-Guizar* suggests that forfeiture is limited to the amounts specified in the counts of conviction."³⁵ Evans may be required to forfeit any proceeds traceable to his participation in the health care fraud scheme, even if the amount was not specified in the counts of conviction.

II. **The United States has shown by a preponderance of the evidence that Dr. Evans received $13,137.97, not $26,708.49, in fraudulent Medicare Part B payments after he began participating in the health care fraud scheme.**

"Restitution is limited to the loss actually caused by the offense of conviction, the time span of which is defined by the '*specific* temporal scope' of the indictment."³⁶ The same is true for forfeiture.³⁷ Neither restitution nor forfeiture can be ordered "for 'losses' attributable to conduct outside the temporal scope of the scheme charged."³⁸ In *United States v. De Leon*, the Fifth Circuit reversed a forfeiture order in a health care fraud case

---

³² R. Doc. 1067.
³³ 150 F.3d 511 (9th Cir. 1998).
³⁴ R. Doc. 1500.
³⁵ *Venturella*, 585 F.3d at 1018.
³⁶ *United States v. De Leon*, 728 F.3d 500, 507 (5th Cir. 2013) (citations omitted).
³⁷ *See United States v. Mason*, 722 F.3d 691, 695 n.4 (5th Cir. 2013). This rule is applicable to Defendants Evans, Shelton Barnes, Michael Jones, and Gregory Molden.
³⁸ *De Leon*, 728 F.3d at 507.

6

because the district court based its calculation on a figure including billings "outside the temporal scope" of the charged scheme.[39]

In this case, the United States bears the burden of showing by a preponderance of the evidence that the forfeiture amount it requests constitutes proceeds within the temporal scope of Evans' participation in the fraudulent scheme.[40] The evidence at trial showed Evans' participation in the scheme began when he signed a Medical Consultant Agreement with Abide Home Care Services, Inc. on September 28, 2011.[41] As a result, only amounts paid to Evans from billings he made subsequent to that date constitute his proceeds from the scheme.[42]

The United States requests a forfeiture amount of $26,708.49.[43] In the Second Superseding Indictment, the United States explains it arrived at this figure by adding the amounts Medicare Part B paid Evans for claims he made under HCPCS Codes G0179, G0180, and G0181 from on or about January 1, 2019 through on or about June 20, 2014 as follows:[44]

---

[39] *Id.* at 508.
[40] *Ayika*, 837 F.3d at 467.
[41] The Medical Consultant Agreement was introduced at trial as Exhibit 321. R. Doc. 1012.
[42] In his Motion to Reconsider, filed on September 22, 2018, Evans argues he should not be required to forfeit Medicare Part B payments received after January 31, 2014. R. Doc. 1506 at 2. His expert Barry G. Lee, CPA, CVA, MAFF, provides calculations based on the amount Evans received in Medicare Part B billings between September 22, 2018 and January 31, 2018. R. Doc. 1506-3 at 3–6. Evans made only two billings under HCPCS Codes 179, 180, or 181, after January 31, 2018, both for patients for whom he had made billings during his participation in the scheme. Exh. 1422 at 52, 61. The Court finds these payments constitute proceeds from Evans' participation in the scheme, which are subject to forfeiture.
[43] R. Doc. 1317.
[44] R. Doc. 670 at 10, ¶ 35.

| HCPCS Code | Amount Billed | Amount Paid |
|---|---|---|
| G0179 | $49,950 | $18,932.69 |
| G0180 | $12,400 | $4,904.80 |
| G0181 | $5,400 | $2,871 |
| Total | $67,750 | **$26,708.49** |

Upon review of the data the United States introduced at trial in Exhibit 1422, the Court finds the figures in the table above include billings Evans made prior to his participation in the scheme. Based on the data in Exhibit 1422, the Court calculates the Medicare Part B billings made after September 28, 2011 as follows:

| HCPCS Code | Amount Billed | Amount Paid |
|---|---|---|
| G0179 | $29,400 | $11,082.58 |
| G0180 | $5,400 | $2,055.39 |
| G0181 | $0 | $0 |
| Total | $34,800 | **$13,137.97** |

Insofar as the United States requests a forfeiture amount greater than $13,137.97, the requested forfeiture amount exceeds the proceeds traceable to the temporal scope of Dr. Evans' participation in the scheme and the Motion for Forfeiture of Property as to those funds is denied. Based on the evidence presented at trial, the Court finds the United States has shown by a preponderance of the evidence that Evans derived $13,137.97 in proceeds from his participation in the scheme during the relevant time period.

**CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that the Motion for Forfeiture of Property filed by the United States be and hereby is **GRANTED IN PART**.[45] Defendant Henry Evans is required to forfeit to the United States $13,137.97, which represents payments received from his Medicare Part B billings under Healthcare Common Procedure Coding System Codes G0179, 180, and 181 after he participated in a health care fraud scheme.

**New Orleans, Louisiana, this 23rd day of September, 2018.**

                                        **SUSIE MORGAN**
                              **UNITED STATES DISTRICT JUDGE**

---

[45] R. Doc. 1317.