# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 15-61** |
| **SHELTON BARNES, ET AL.** | **SECTION: "E" (2)** |

## ORDER AND REASONS

Before the Court are five motions for release pending appeal, filed by Defendants Shelton Barnes, Gregory Molden, Paula Jones, Michael Jones, and Henry Evans (collectively, "Defendants").[1] The Government opposes Defendants' motions.[2] Defendant Barnes filed a reply memorandum.[3] For the following reasons, Defendants' motions are **DENIED**.

## BACKGROUND

On March 12, 2015, a federal grand jury returned a twenty-six-count Indictment against Defendants and sixteen other co-defendant/co-conspirators, relating to their alleged roles in a conspiracy to defraud Medicare.[4] On April 21, 2016, the grand jury returned a Superseding Indictment that included most of the same charges as those in the original indictment but no longer included charges associated with defendants who had pleaded guilty by that time.[5] On September 8, 2016, the grand jury returned a forty-seven-count Second Superseding Indictment including most of the same charges as those in the

---

[1] R. Docs. 1548 (Barnes), 1553 (Molden), 1559 (Paula Jones), 1597 (Michael Jones), 1608 (Evans). Defendant Jonathon Nora was also sentenced, but he did not file a motion for release pending appeal.
[2] R. Docs. 1584, 1609.
[3] R. Doc. 1617.
[4] R. Doc. 1.
[5] R. Doc. 484.

original and First Superseding Indictment, but no longer including charges associated with the defendants who had pleaded guilty by that time.[6]

Defendants were charged as follows in the Second Superseding Indictment. All Defendants were charged in Count 1, conspiracy to commit health care fraud, and Count 2, conspiracy to receive and pay illegal health care kickbacks.[7] Barnes also was indicted on Counts 3–7, individual counts of health care fraud relating to patient HaHa; Counts 8–11, relating to patient KiSt; Counts 11–17, relating to patient ArGi; and Count 47, relating to obstruction of a federal audit. Michael Jones was indicted on Counts 18–21, relating to patient ArGi; Counts 22–26, relating to patient LiSc; and Count 27, relating to patient EvLa. Evans was indicted on Counts 28 and 29, relating to patient JeJo; Counts 30 and 31, relating to patient JoWi; and Counts 43–46, relating to patient MaGr. Molden was indicted on Counts 32–37, relating to patient KeTr; and Counts 38–42, relating to patient ShBe. Nora was indicted Count 27, relating to patient EvLa.[8]

Trial in this matter began on April 10, 2017. On May 9, 2017, after sixteen days of trial testimony and more than two days of deliberation, the jury convicted Barnes, Molden, and Paula Jones on all counts for which they were charged in the Second Superseding Indictment.[9] Michael Jones was found guilty as to Counts 1, 2, 18, and 22–27, and not guilty as to Counts 19, 20, and 21. Evans was found guilty as to Counts 31 and 43–46, and not guilty as to as to Counts 1, 2, and 28–30.[10]

Following the verdict, Defendants filed post-trial motions pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure moving for acquittal and for new

---

[6] R. Doc. 670, *as corrected by* R. Doc. 691.
[7] *Id.* at 8–12.
[8] *Id.* at 30–32.
[9] R. Doc. 1067.
[10] *Id.*

trials.[11] They argued the evidence presented at trial was insufficient for a jury to convict them, contested evidentiary rulings, and raised other issues that arose before and during the trial.

On January 30, 2018, the Fifth Circuit issued an opinion in *United States v. Ganji* reversing and vacating convictions for conspiracy to commit health care fraud and health care fraud, finding the evidence presented at trial in that case was insufficient to support a conviction.[12] The Court permitted Defendants to file supplemental memoranda in support of their post-trial motions to address whether the *Ganji* decision affected the verdict.[13] On August 27, 2018, the Court denied Defendants' post-trial motions, distinguishing *Ganji* and responding to each argument raised in the motions.[14]

Defendants were sentenced on September 25, 2018.[15] They appealed their sentences to the Fifth Circuit[16] and filed the instant motions for release pending appeal.[17] As in their post-trial motions and supplemental memoranda, Barnes, Molden, Paula Jones, and Evans repeat their argument that, under *Ganji*, the evidence presented for each Defendant was insufficient to support a conviction.[18] Defendants also raise many of the same issues litigated in their post-trial motions. The Government filed a consolidated opposition to the motions of Barnes, Molden, and Paula Jones,[19] and a consolidated

---

[11] R. Docs. 1074, 1085, 1087, 1102, 1455.
[12] 880 F.3d 760 (5th Cir. 2018).
[13] R. Docs. 1435 (Barnes), 1437 (Molden), 1438 (Michael Jones), 1439 (Paula Jones), 1440 (Evans).
[14] R. Doc. 1482.
[15] R. Doc. 1519.
[16] R. Docs. 1534 (Barnes), 1539 (Michael Jones), 1547 (Evans), 1551 (Paula Jones), 1552 (Molden).
[17] R. Docs. 1548 (Barnes), 1553 (Molden), 1559 (Paula Jones), 1597 (Michael Jones), 1608 (Evans).
[18] R. Doc. 1548-1 at 6–7, R. Doc. 1553-1 at 4–5, R. Doc. 1559-1 at 16–18, R. Doc. 1597-1 at 9 (Michael Jones adopting all other Defendants' arguments).
[19] R. Doc. 1584.

opposition to all five Defendants' motions.[20] Barnes filed a reply.[21] On November 28, 2018, the Court held oral argument on the motions.[22]

## **LEGAL STANDARD**

18 U.S.C. § 3143(b)(1) provides that, after being sentenced, a defendant who has filed an appeal shall be detained unless a court finds

(A)     by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

(B)     that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

(i)      reversal,

(ii)     an order for a new trial,

(iii)    a sentence that does not include a term of imprisonment, or

(iv)    a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

The Fifth Circuit has restated this test as requiring a defendant to show:

(1)     that he is not likely to flee or pose a danger to the safety of others;

(2)     that the appeal is not for purpose of delay;

(3)     that the appeal raises a substantial question of law or fact; and

(4)     that the substantial question, if decided favorably to the defendant, is likely to result in reversal, in an order for a new trial, in a sentence without imprisonment, or in a sentence with reduced imprisonment.[23]

There is a presumption against the grant of release pending appeal, and the burden is on the defendant to prove by clear and convincing evidence that the factors above are met.[24]

With respect to the first two factors, Defendants assert they are not likely to flee, they do not pose a danger to safety, and their appeals are not for the purpose of delay.[25]

---

[20] R. Doc. 1609.

[21] R. Doc. 1617.

[22] R. Doc. 1633.

[23] *United States v. Clark*, 917 F.2d 177, 179 (5th Cir. 1990).

[24] *See United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987)

[25] R. Doc. 1548-1 at 3–5, R. Doc. 1553-1 at 2–4, R. Doc. 1559-1 at 1–2, R. Doc. 1597-1 at 1–2, R. Doc. 1608-1 at 4.

The Government does not contest these points.[26] Rather, the Government argues Defendants have failed to show the appeals raise substantial questions of law or fact, which, if decided favorably to Defendants, are likely to result in reversals or orders for new trials.[27]

To show a question is a "substantial question of law or fact," a defendant must show the question is one which is "novel, which has not been decided by controlling precedent, or which is fairly doubtful."[28] A question is substantial if it is "close" or "very well could be decided the other way," meaning "the issue presented must raise a substantial doubt (not merely a fair doubt) as to the outcome of its resolution."[29] This determination must be made "on a case-by-case basis."[30] The Fifth Circuit has stated that "the absence of controlling precedent is only one factor to be considered in the court's determination."[31]

If the Court determines an appeal raises a substantial question of law or fact, the Court must determine whether the question is one which, "if decided favorably to the defendant, is likely to result in reversal, in an order for a new trial, in a sentence without imprisonment, or in a sentence with reduced imprisonment."[32] "Likely" in this context means "more probable than not."[33] In considering whether it is more probable than not the Fifth Circuit or the Supreme Court will reverse, order a new trial, or impose no

---

[26] R. Doc. 1609 at 6.
[27] *Id.*
[28] *United States v. Valera-Elizondo*, 761 F.2d 1020, 1023 (5th Cir. 1985) (citing *United States v. Miller*, 753 F.2d 19 (3d Cir.1985)).
[29] *Id.* (citing *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir.1985)).
[30] *Id.*
[31] *Id.* at 1024.
[32] *Clark*, 917 F.2d at 179.
[33] *Valera-Elizondo*, 761 F.2d at 1025 ("We assign to 'likely' its ordinary meaning of 'more probable than not.'").

imprisonment or less imprisonment, the Court will consider the standard of review an appellate court would apply to each ruling.[34]

## ANALYSIS

### I.    Sufficiency of the Evidence

Defendants argue the Court erred in not granting their motions for acquittal or for new trial based on the sufficiency of the evidence with respect to conspiracy to commit healthcare fraud or healthcare fraud.[35] The Fifth Circuit "review[s] challenges to the sufficiency of the evidence de novo. Even when examined de novo, review of the sufficiency of the evidence is highly deferential to the verdict."[36]

In *Ganji*, the Fifth Circuit reversed the convictions of defendants Drs. Ganji and Davis because the Government failed to present either direct evidence of an agreement to defraud Medicare or circumstantial evidence of a concert of action sufficient to sustain a conviction.[37] In its Order of August 27, 2018, the Court addressed the *Ganji* case in the context of Defendants' motions for acquittal or for a new trial.[38] As the Court explained,

> At the *Ganji* trial, the Government introduced indirect evidence of concerted action—doctors and nurses who spoke of their own fraudulent actions—but the Government elicited no testimony that any person agreed with Dr. Ganji to carry out these activities. In addition, Dr. Ganji "provided extensive, undisputed testimony" of her innocence that was unrebutted by the Government. . . . [I]mportant factual distinctions exist between Ganji

---

[34] *See Clark*, 917 F.2d at 180 ("[G]iven that a lower court's denial of a motion to withdraw a guilty plea is reversed only for an abuse of discretion, we cannot conclude that this allegation of error is so convincing as to indicate that Clark has 'a substantial chance of prevailing' on appeal.") (citations omitted); *United States v. Paris*, No. 5:17-CR-50010-2 & 3, 2018 WL 4854669, at *3 (W.D. Ark. Oct. 5, 2018) ("[T]his Court feels the need to address what the standard of review for this issue will be on appeal.").

[35] R. Doc. 1548-1 at 6–7 (Barnes); R. Doc. 1553-1 at 4–5 (Molden); R. Doc. 1559-1 at 16–18 (Paula Jones). Michael Jones adopts all other Defendants' arguments by incorporation. R. Doc. 1597-1 at 9. Evans does not cite *Ganji*, but argues the evidence was insufficient to convict him. R. Doc. 1608-1 at 5–7.
    The Court notes that, in *Ganji*, the Government did not bring a charge for violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), or conspiracy to violate the statute. 880 F.3d at 774 ("The Government . . . notably charged no one in this case with violating the Kickback Statute.").

[36] *United States v. Davis*, 735 F.3d 194, 198 (5th Cir. 2013) (citations and internal quotations omitted).

[37] 880 F.3d at 768–78.

[38] R. Doc. 1482 at 14–22 (Barnes), 26–31 (Evans), 34–37 (Michael Jones and Paula Jones), 42–44 (Molden).

and this case. . . . In this case, the Government presented direct and compelling evidence of Shelton Barnes' and the other Defendants' agreement to join the conspiracy to commit health care fraud.[39]

Defendants argue there is a substantial question of law as to whether the evidence presented at trial was sufficient to sustain convictions for health care fraud and conspiracy to commit health care fraud.[40] The Court turns to the arguments Defendants raise in their motions.

A. Barnes and Molden

Barnes and Molden argue, under *Ganji*, there is a substantial question of law as to the sufficiency of the evidence as to them.[41] Barnes and Molden argue there was no direct evidence of their participation in a conspiracy to defraud Medicare.[42] They point to the testimony of Lisa Crinel, which they argue shows there was, in fact, no conspiracy.[43] In its Order of August 27, 2018, the Court reviewed the evidence presented at trial as to Barnes and Molden and found that, unlike in *Ganji*, there was direct evidence at trial of the fraudulent actions of both defendants.[44] The Court found the evidence in this case analogous to the evidence presented in *United States v. Dailey*[45] and *United States v. Murthil*,[46] in which the Fifth Circuit upheld convictions for conspiracy to commit health care fraud and health care fraud because direct evidence was presented.[47]

---

[39] *Id.* at 4, 16.
[40] *See United States v. Dixon*, 185 F.3d 393, 403 (5th Cir. 1999) ("[S]ufficiency of the evidence" is generally considered a legal issue."). When a defendant moves for acquittal in the district court, challenging the sufficiency of the evidence, this Court reviews the district court's denial de novo. *Ganji*, 880 F.3d at 767 (citing *United States v. Danhach*, 815 F.3d 228, 235 (5th Cir. 2016)).
[41] R. Doc. 1548-1 at 6–7; R. Doc. 1553-1 at 4–5.
[42] R. Doc. 1548-1 at 6–7; R. Doc. 1553-1 at 4–5.
[43] R. Doc. 1548-1 at 8–10; R. Doc. 1553-1 at 6–7.
[44] R. Doc. 1482 at 10–14 (Barnes), 41–47 (Molden).
[45] 868 F.3d 322 (5th Cir. 2017).
[46] 679 F. App'x 343 (5th Cir. 2017).
[47] R. Doc. 1482 at 16–18.

There is no question that, to sustain a conviction of conspiracy to commit healthcare fraud, the Fifth Circuit requires sufficient evidence of an agreement, whether direct evidence of the defendant's agreement, or circumstantial evidence of the "*conspirators' individual actions* that, taken together, evidence an agreement to commit an unlawful objective beyond a reasonable doubt."[48] In *Ganji*, there was no direct evidence of two defendants' joining the conspiracy, and the Fifth Circuit evaluated the sufficiency of the circumstantial evidence presented.[49] The issue in this case is whether sufficient evidence was introduced to prove the existence of an agreement and that the defendants knew of the unlawful purpose of the agreement. After detailed review of the evidence presented at trial, and with due consideration of *Ganji*, *Dailey*, and other precedent, the Court concluded direct evidence had been introduced sufficient to support the convictions of each defendant.[50] Barnes and Molden have not established a substantial question exists as to the correctness of the Court's ruling.[51]

B.  Paula Jones

Paula Jones argues there is a substantial question of law about whether the Court erred in denying her motion for acquittal, in which she argued, under *Ganji*, that there was insufficient evidence to convict her.[52] Like Barnes and Molden, Paula Jones points to Crinel's testimony to argue there was no conspiracy between Crinel and Paula Jones and no conspiracy to commit health care fraud or to pay and receive kickbacks.[53] She also

---

[48] *Ganji*, 880 F.3d at 768–69 (emphasis in original).
[49] *Id.*
[50] R. Doc. 1482 at 10–14 (Barnes), 41–47 (Molden).
[51] Barnes and Molden cite *United States v. Reed*, No. CR 15-100, 2017 WL 947274, at *4 (E.D. La. Mar. 9, 2017) (Fallon, J.), in which the trial court agreed with the Defendants that there was a substantial question of law as to whether the Fifth Circuit would extend the Supreme Court's holding in *United States v. McDonnell*, 136 S. Ct. 2355 (2016). In this case, Defendants have not met their burden of showing a substantial question of law.
[52] R. Doc. 1559-1 at 9–12.
[53] *Id.* at 9–11.

argues she performed a clerical function and had no knowledge of any unlawful agreements between Crinel and any doctors.[54]

In its Order of August 27, 2018, the Court reviewed the evidence presented at trial as to Paula Jones and found there was evidence at trial that, although Paula Jones avoided overt discussions of the kickback conspiracy, she willfully and knowingly joined the conspiracy, "even if the agreement was 'silent and informal.'"[55] The Court cited documentary evidence, including reports Paula Jones prepared, and witness testimony as to Paula Jones' knowledge of the conspiracy.[56]

*Ganji* holds that evidence is insufficient as a matter of law when there is no direct evidence of either a conspiracy to commit health care fraud or health care fraud and the circumstantial evidence of a concert of action does not establish the elements of the crimes.[57] Evidence is sufficient in cases in which direct evidence of defendants' knowledge was presented.[58] Because Paula Jones has not shown an absence of direct evidence as to her knowledge of the conspiracy, she has failed to meet her burden of showing a substantial question of law exists as to the sufficiency of the evidence presented against her at trial.

C. Evans

Evans also argues there is a substantial question of law as to the sufficiency of the evidence against him.[59] Evans was found guilty as to Counts 31 and 43–46 and not guilty as to as to Counts 1, 2, and 28–30.[60] Count 31 charged health care fraud relating to patient

---

[54] *Id.* at 11–12.
[55] R. Doc. 1482 at 48–51.
[56] *Id.*
[57] 880 F.3d at 768–78.
[58] *See, e.g., Dailey*, 868 F.3d 322; *Murthil*, 679 F. App'x 343.
[59] R. Doc. 1608-1 at 5–7.
[60] R. Doc. 1067.

JoWi, and Counts 43–46 charged health care fraud relating to patient MaGr.[61] Evans argues that the evidence presented at trial was insufficient to support a finding Evans was guilty of health care fraud as to JoWi and MaGr because the Government did not show they were ineligible for home health care.[62] On this basis, Evans argues there is a substantial question as to the sufficiency of the evidence against him.[63] Evans cites to his supplemental memorandum in support of his motion for acquittal or for new trial,[64] in which he states the "inadequacy of [the presented] evidence was demonstrated."[65]

The Court addressed these arguments in its order of August 27, 2018 and found the Government presented direct evidence of Evans' health care fraud in connection with these payments.[66] The Court found that Dr. Brobson Lutz and Agent Bradford testified as to health care fraud regarding patient MaGr,[67] and that Evans himself testified he had not treated patient JoWi, whom he certified for home health care.[68]

18 U.S.C. § 1347(a) makes it a crime for anyone to "knowingly and willfully execute[], or attempt[] to execute, a scheme or artifice to defraud any health care benefit program; or to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program." As the Court found in its order on Evans' motion for acquittal or for new trial, there was sufficient evidence at trial establishing Evans met the elements of the crime.[69]

---

[61] R. Doc. 670.
[62] R. Doc. 1608-1 at 6.
[63] *Id.*
[64] R. Doc. 1440.
[65] R. Doc. 1608-1 at 6.
[66] R. Doc. 1482 at 26–32.
[67] *Id.* at 29.
[68] *Id.* at 30.
[69] *Id.* at 31–32.

Evans has not established a substantial question of law on this issue. As a result, the Court denies Evans' motion for release pending appeal on these grounds.

## II.     Prosecutor's Comments at Closing

Defendants claim the Government, in closing, commented on the "elite" status of the defendants and the temperance, professionalism, and credibility of defense counsel; stated that Lisa Crinel picked the doctors as co-conspirators;[70] and allegedly impugned Paula Jones' religious devotion.[71] Defendants Barnes, Molden, Paula Jones, and Michael Jones argue the Court erred in not admonishing the Government about the comments; not instructing the jury with respect to the allegedly improper comments; and denying their motions for acquittal or for new trial on the basis of those comments.[72]

Defendants base their appeal on the Court's finding that the Government's remarks did not violate their substantial rights and, as a result, no admonishment or instruction was necessary, and the remarks did not support an order of acquittal or the grant of a new trial. Defendants bear the burden of proof of establishing the existence of a substantial question of law on this issue. To determine whether the prosecutor's comments were improper, a court "'must weigh the degree to which the alleged improper argument may have affected the substantial rights of the defendants.' Pertinent factors include: (1) the magnitude of the prejudicial effect of the statements, (2) the efficacy of any cautionary instructions, and (3) the strength of the evidence of defendant's guilt."[73] "If an improper remark was made, [the Court must] evaluate whether the remark affected

---

[70] R. Doc. 1548-1 at 7–8, R. Doc. 1553-1 at 5, R. Doc. 1559-1 at 6–7, R. Doc. 1597-1 at 6–7.
[71] R. Doc. 1559-1 at 7.
[72] R. Doc. 1548-1 at 7–8, R. Doc. 1553-1 at 5, R. Doc. 1559-1 at 6–7, R. Doc. 1597-1 at 6–7.
[73] *United States v. McPhee*, 731 F.2d 1150, 1152 (5th Cir. 1984) (quoting *United States v. Rhoden,* 453 F.2d 598, 600 (5th Cir.1972)).

the substantial rights of the defendant."[74] In its Order of August 27, 2018, the Court applied this test to the Government's comments at closing.[75] The Court found some of the remarks were or may have been improper, but none of them affected Defendants' substantial rights.[76] Defendants have failed to meet their burden of showing substantial doubt as to the correctness of the Court's ruling.

The Court notes that, even if there were a substantial question of law as to whether these remarks affected the substantial rights of the Defendants, they have not established that a decision in their favor would likely result in reversal or an order for a new trial. The Fifth Circuit reviews challenges to allegedly improper remarks made by a prosecutor "to determine if there is a meaningful risk that the verdict was improperly affected by those remarks."[77] "[A] 'criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone.'"[78] Defendants have not shown a meaningful risk that any allegedly improper remarks affected the verdict.

## III.    Exclusion of Consent Forms—Exhibits 4083, 4084, and 4085.

Barnes and Molden argue the Court erred in excluding Exhibits 4083, 4084, and 4085, which are forms signed by patients KiSt, HaHa and ArGi in which those patients acknowledge they are homebound.[79] The Court found in its Order of August 27, 2018 that these exhibits were properly excluded as hearsay not within any exception to the hearsay rule and not admissible as impeachment evidence.[80] Barnes and Molden argue the Court's

---

[74] *United States v. McCann*, 613 F.3d 486, 495 (5th Cir. 2010) (quoting *United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999)) (alteration in original).
[75] R. Doc. 1482 at 86–91.
[76] *Id.*
[77] *United States v. Mendoza*, 522 F.3d 482, 491–92 (5th Cir. 2008).
[78] *Id.* at 492 (quoting *United States v. Andrews*, 22 F.3d 1328, 1341 (5th Cir. 1994)).
[79] R. Doc. 1548-1 at 10–11, R. Doc. 1553-1 at 7.
[80] R. Doc. 1482 at 93–95.

exclusion of the exhibits was erroneous, but they cite no legal authority to show the Court's evidentiary rulings were incorrect or even a close call.[81] The Fifth Circuit "reviews decisions to admit or exclude evidence for abuse of discretion."[82] Rulings that the Fifth Circuit reviews for abuse of discretion are less likely to be reversed on appeal.[83] Barnes and Molden have not met their burden of establishing a substantial doubt exists as to the correctness of the Court's evidentiary rulings on Exhibits 4083, 4084, and 4085.

## IV. Denial of Defendants' Request for an Instruction on Medicare Regulations

Barnes and Molden argue the Court erred in denying their request for the Court to instruct the jury on Medicare regulations relevant to this case.[84] As the Court explained in its Order of August 27, 2018, the regulations were admitted into evidence without objection as Court Exhibits 14 and 15 and Trial Exhibits 100, 101, 103, 4021, and 4022 and were provided to the jury.[85] On May 2, 2017, the Court informed defense counsel that they would be allowed to argue to the jury in closing that the Defendants followed the regulations in good faith, so long as the regulations in question had been admitted into evidence.[86] All the regulations mentioned in Barnes and Molden's motions were admitted into evidence. Counsel for Barnes referenced Exhibits 4021, 4022, and Court Exhibit 15 in his closing argument.[87] The Court found its refusal to give the instruction did not

---

[81] R. Doc. 1548-1 at 10–11, R. Doc. 1553-1 at 7.

[82] *United States v. Walker*, 410 F.3d 754, 757 (5th Cir. 2005) (citing *United States v. Phillips*, 219 F.3d 404, 409 (5th Cir.2000)).

[83] *Clark*, 917 F.2d at 180 ("[G]iven that a lower court's denial of a motion to withdraw a guilty plea is reversed only for an abuse of discretion, we cannot conclude that this allegation of error is so convincing as to indicate that Clark has 'a substantial chance of prevailing' on appeal.") (citations omitted).

[84] R. Doc. 1548-1 at 11–13, R. Doc. 1553-1 at 7–9.

[85] R. Doc. 1482 at 79 (citing R. Doc. 1468 at 5).

[86] R. Doc. 1467 at 4.

[87] R. Doc. 1141 at 27–28.

seriously impair Defendants' ability to present a defense based on the regulations and that any error was harmless.[88]

Barnes and Molden intend to appeal the Court's refusal to read the Medicare regulations to the jury as a part of the jury instructions. They argue there is a substantial question of law as to the correctness of the Court's ruling.[89]

All that is required of the jury instructions is that they (1) correctly state the law; (2) clearly instruct the jurors; and (3) be factually supportable.[90] District courts "enjoy substantial latitude in formulating a jury charge."[91] A district court abuses its discretion by failing to issue a defendant's requested instruction if the requested instruction "(1) is substantively correct; (2) is not substantially covered in the charge given to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to present effectively a particular defense."[92] The Court allowed the Medicare regulations to be admitted into evidence and provided to the jury and informed the parties that they would be allowed to argue the regulations in closing. As a result, the failure to give the instruction did not seriously impair the defendants' ability to present effectively a defense based on the exceptions and exemptions found in the regulations, and any error in failing to instruct the jury was, therefore, harmless.[93]

Even if the Court's failure to include the regulations in the jury instructions raises a substantial question of law, the Court notes that the Fifth Circuit reviews errors with

---

[88] R. Doc. 1482 at 81.
[89] R. Doc. 1548-1 at 11–13, R. Doc. 1553-1 at 7–9.
[90] *Fairley*, 880 F.3d at 208.
[91] *United States v. Webster*, 162 F.3d 308, 321–22 (5th Cir. 1998).
[92] *United States v. Bennett*, 874 F.3d 236, 242–43 (5th Cir. 2017). *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (quoting *Cooper Indus., Inc. v. Tarmac Roofing Sys., Inc.*, 276 F.3d 704, 714 (5th Cir.2002)).
[93] *United States v. Sanjar*, 876 F.3d 725 (5th Cir. 2017) (Courts of appeals "review the propriety of jury instructions for abuse of discretion, subject again to a harmless error analysis").

respect to jury instructions for abuse of discretion when they do not hinge on questions of statutory construction.[94] In light of the deferential standard of review applied to rulings on jury instructions and the fact the Court did not impair Defendants' ability to present effectively a particular defense, the Court finds Barnes and Molden have not shown the Fifth Circuit is likely to reverse or order a new trial on this basis, even if the Court's refusal to instruct the jury on Medicare regulations was in error. As a result, the Court denies their motions for release pending appeal on these grounds.

## V.    Count 47 as to Barnes

Barnes argues the Court erred in not dismissing Count 47 of the Second Superseding Indictment, which charged Barnes with obstruction of a federal audit under 18 U.S.C. § 1516.[95] The statute includes a jurisdictional requirement that $100,000 be paid in any one year.[96] In its order of May 19, 2017, the Court found this requirement was met because, under the unambiguous language of the statute, over $100,000 was paid by the United States to Medicare in any one year.[97] Barnes argues the Court's ruling was in error because the jurisdictional requirement was not met and that there is a substantial question of law on this issue.[98]

As Barnes notes, there is no caselaw directly on point. However, "the lack of controlling precedent may in some instances be indicative of only that the issue is so patently frivolous that it has not been found necessary for it to have been resolved."[99] As

---

[94] *Wright*, 634 F.3d at 774 (citing *United States v. Williams*, 610 F.3d 271, 285 (5th Cir.2010)).

[95] R. Doc. 1548-1 at 13–14.

[96] 18 U.S.C. § 1516(a) (making it a crime "to influence, obstruct, or impede a Federal auditor in the performance of official duties relating to a person, entity, or program receiving in excess of $100,000, directly or indirectly, from the United States in any 1 year period").

[97] R. Doc. 1078 at 5.

[98] R. Doc. 1548-1 at 13–14.

[99] *Valera-Elizondo*, 761 F.2d at 1024.

the Court found in its order of May 19, 2017, the statutory language of 18 U.S.C. § 1516 is unambiguous.[100]

The Fifth Circuit "reviews *de novo* questions of statutory interpretation, as well as 'whether an indictment sufficiently alleges the elements of an offense.'"[101] Barnes argues the "statute is contradictory and unclear" and attempts to shift the burden to the Government to show the statute is unambiguous.[102] The burden is on the defendant to prove by clear and convincing evidence that he meets the requirements of 18 U.S.C. § 3143(b)(1).[103] Barnes has failed to meet his burden of establishing substantial doubt as to the interpretation of 18 U.S.C. § 1516.

Furthermore, even if there were a substantial question of law as to the interpretation of the statute, and Barnes' conviction on Count 47 were to be reversed, his sentencing calculation would remain unchanged. As the Court explained at his sentencing, Barnes was sentenced to a term of 60 months as to Counts 2 and 47 and 60 months as to 1 and 3 – 17, all to be served concurrently.[104] Even if the Fifth Circuit were to reverse as to Count 47, Barnes' sentence would be 60 months. As a result, Barnes cannot show a likelihood that the Fifth Circuit would reverse his conviction or order a new trial on this basis.

## VI. Crear Conspiracy

Paula Jones and Michael Jones argue the Court erred when it admitted evidence of a conspiracy to commit Medicare fraud between Jobie Crear and Crinel prior to

---

[100] R. Doc. 1078 at 5.
[101] *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (citing *United States v. Santos–Riviera*, 183 F.3d 367, 369 (5th Cir.1999)).
[102] R. Doc. 1548-1 at 14 ("[T]he defense, government and Court could not provide definitive authority one way or the other, which are good grounds for appellate review and reversal.").
[103] *See Williams*, 822 F.2d at 517.
[104] R. Doc. 1662 at 61.

Hurricane Katrina.[105] They argue the Court made three errors: (1) determining evidence of the Crear conspiracy was intrinsic to the charged conspiracy and, as a result, permitting Crinel to testify about a pre-Katrina conspiracy between Crear and Crinel; (2) permitting Agent Bradford to testify as to Paula Jones' salary pre-Katrina; and (3) failing to grant Paula Jones and Michael Jones a new trial based on the Government's allegedly improper comments during closing argument about their relationship with Crear.[106]

### A. Lisa Crinel's Testimony about Crear

Before trial, Michael Jones filed a motion in limine to exclude the testimony of Crear pursuant to Rule 404(b) of the Rules of Evidence.[107] The Government opposed, arguing testimony about the Crear conspiracy was intrinsic to the charged conspiracy as to Michael Jones.[108] Michael Jones and Paula Jones filed supplemental briefing arguing the evidence was not intrinsic to the conspiracy.[109] The Government filed a supplemental opposition.[110]

At a status conference on April 10, 2017, the day before the beginning of trial, the Court addressed Michael Jones' motion.[111] The Court granted the motion in part to the extent it agreed to specify what testimony by Crear and Crinel would be permitted.[112] The Court stated that, as to Michael Jones, Crinel would be permitted to "testify that Dr. [Michael] Jones wanted the same arrangement as Dr. Crear, that [Crinel] paid Dr. Jones' employees and his wife [Paula Jones] rather than compensating him directly for

---

[105] R. Doc. 1559-1 at 3–6, R. Doc. 1597-1 at 3–6.
[106] R. Doc. 1559-1 at 3–6, R. Doc. 1597-1 at 3–6.
[107] R. Doc. 958. At the hearing on the motion, counsel for Paula Jones joined in the motion in limine. R. Doc. 1008 at 37.
[108] R. Doc. 961.
[109] R. Doc. 972.
[110] R. Doc. 973 at 6–7.
[111] R. Doc. 1008 at 36.
[112] *Id.* at 37. Although the motion in limine referred only to Crear's testimony, the Court addressed the testimony of Crinel and Crear on this topic. Crear did not testify at the trial.

referrals[, and Crinel could] testify about how Dr. Jones knew about her relationship with Dr. Crear, if she has personal knowledge."[113] It found this evidence intrinsic and that its probative value was not outweighed by its prejudicial effect.[114] As to Paula Jones, the Court permitted Crinel to "testify that she increased Paula Jones' salary to compensate Dr. [Michael] Jones for referrals."[115] The Court further explained that testimony about Crear's pre-Katrina relationship "shows how Dr. [Michael] Jones and Paula Jones knew about the financial arrangement between Dr. Crear and Abide."[116]

At trial, Crinel testified that during a meeting in a restaurant in New Orleans, she and Michael Jones discussed entering into an agreement whereby Michael Jones would receive in-kind kickbacks in the form of an increase in his wife's salary in exchange for referrals to Abide.[117] Crinel testified that, during the conversation in which Michael Jones told her that he wanted to set up a kickback relationship, Crinel suggested he was following in Crear's footsteps, stating she "teased him that he was trying to be the next Jobie Crear."[118] As to Paula Jones, Crinel testified that, although Paula Jones "stayed out of it," Crinel would have "bitch sessions" and complain that "her husband wasn't keeping his end of the bargain," and Paula Jones would respond, "That's between you and Michael and I'm not going to get involved in that."[119]

Crinel also testified about the nature of her arrangement with Crear. She explained that, in exchange for Crear sending patients to Abide, Lisa would pay the salaries of

---

[113] *Id.* at 39.
[114] *Id.*
[115] *Id.*
[116] *Id.* at 67.
[117] R. Doc. 1108 at 234.
[118] *Id.* Paula Jones and Michael Jones make much of the fact that Crinel, rather than Michael Jones, brought up Crear's name in this conversation. This distinction was not material to the Court's determination that the evidence was intrinsic to the charged conspiracy.
[119] *Id.* at 253.

several of Crear's employees, including Paula Jones.[120] Crinel further testified that Crear set up a meeting between him, Crinel, and Paula Jones, to help explain the home health care industry, and that after this meeting, Crinel began paying Ms. Jones' salary.[121]

In its order of August 27, 2018, the Court reviewed the testimony that was allowed in relation to Crear.[122] The Court found evidence of the Crear conspiracy was intrinsic to the charged conspiracy because it arose during the pivotal conversation between Michael Jones and Crinel about Michael Jones' joining the conspiracy and concerned how Michael Jones would become a member and how the conspiracy would work.[123]

In the instant motions, Paula Jones and Michael Jones argue the Court's admitting evidence of the Crear conspiracy was erroneous because the evidence was not intrinsic to the charged conspiracy, and the evidence should have been excluded under Rule 404(b). In the instant motions, they argue there was no evidence presented that either of them even knew of the Crear conspiracy, so evidence of the Crear conspiracy could not have been intrinsic.[124]

"Evidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy came about, how it was structured, and how the [defendant] became a member."[125] "This evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place."[126] "Intrinsic evidence does not implicate Rule 404(b), and 'consideration of its admissibility pursuant to Rule 404(b) is unnecessary.'"[127] The

---

[120] *Id.* at 52–56.
[121] *Id.* at 56.
[122] R. Doc. 1482 at 95–100.
[123] *Id.* at 98.
[124] R. Doc. 1559-1 at 3–4, R. Doc. 1597 at 3–4.
[125] *United States v. Watkins*, 591 F.3d 780, 784 (5th Cir. 2009) (citing *United States v. Nichols*, 750 F.2d 1260, 1265 (5th Cir. 1985)).
[126] *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996).
[127] *Id.* (quoting *United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir. 1994)).

Court permitted Crinel to testify about the Crear conspiracy because it found the evidence intrinsic to the charged conspiracy.[128] Clearly, as noted above, there was testimony about how the conspiracy with Michael Jones and Paula Jones was structured and how they became members of the conspiracy.

Paula Jones and Michael Jones have failed to meet their burden of establishing the existence of a substantial question of fact as to the correctness of the Court's ruling. Even if there were a substantial question as to whether the Court erred in finding the evidence was intrinsic to the conspiracy in this case, Paula Jones and Michael Jones have not established that a decision in their favor would likely result in reversal or an order for a new trial. The Fifth Circuit "review[s] the admission of evidence for abuse of discretion and will reverse only if the challenged ruling is erroneous and affects a substantial right of the party."[129] Paula Jones and Michael Jones have not shown the Court's admitting evidence of the Crear conspiracy meets this high bar.

### B. Cross Examination of Agent Bradford

Paula Jones and Michael Jones argue that the Court improperly did not exclude Agent Bradford's comment that "Lisa Crinel testified that . . . part of [Paula Jones' pre-Katrina] salary was an in-kind kickback to Dr. Crear."[130] The Court notes this testimony was elicited by counsel for Paula Jones on cross-examination, who did not move for a curative instruction at that time.[131] Moreover, Crinel testified that, pre-Katrina, she was "paying Paula's salary on behalf of Dr. Crear."[132]

---

[128] R. Doc. 1008 at 39.
[129] *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994) (citing *Southern Pacific Transp. Co. v. Chabert,* 973 F.2d 441, 448 (5th Cir. 1992), *cert. denied,* 507 U.S. 987 (1993)).
[130] R. Doc. 1559-1 at 5–6, R. Doc. 1597-1 at 5–6.
[131] R. Doc. 1115 at 15.
[132] R. Doc. 1108 at 57.

It is unclear what error Paula Jones and Michael Jones claim the Court committed. Paula Jones and Michael Jones cite no cases and include no analysis to show the existence of a substantial question of fact or law on this issue.

C. Comments in Closing Arguments about Crear

Paula Jones and Michael Jones argue that the Government made improper statements during closing that "they did the phoney thing that Dr. Crear taught them how to do. Let me just pay for this person's salary, and then I'll give you the kickbacks."[133] Paula Jones apparently argues these comments were so prejudicial she should have been granted a new trial or a judgment of acquittal. In determining whether the prosecutor's comments were improper, the Court "must weigh the degree to which the alleged improper argument may have affected the substantial rights of the defendants."[134] Paula Jones and Michael Jones have not met their burden of proving their substantial rights were affected by the Government's comment.

The Fifth Circuit reviews challenges to allegedly improper remarks made by a prosecutor "to determine if there is a meaningful risk that the verdict was improperly affected by those remarks."[135] Paula Jones and Michael Jones have not met their burden of proving the allegedly improper remarks created a meaningful risk that the verdict was improperly affected.

VII. Alleged Discovery Violations

Paula Jones and Michael Jones argue the Court erred when it determined the Government did not violate its discovery obligation by its alleged untimely production of

---

[133] R. Doc. 1103 at 7.
[134] *McPhee*, 731 F.2d at 1152 (quoting *Rhoden,* 453 F.2d at 600).
[135] *Mendoza*, 522 F.3d at 491–92.

Larry Taylor's testimony to the grand jury.[136] Paula Jones and Michael Jones acknowledge that, at trial, the Court in fact granted Defendants' request for a precautionary instruction and prevented Taylor from testifying that Michael Jones instructed him to lie to the grand jury.[137]

In its order on Paula Jones and Michael Jones' motions for new trial, the Court relied on *Jencks v. United States*[138] and held the Government had no obligation to disclose the grand jury testimony of Larry Taylor until the close of his direct testimony.[139] The Court also held that, to the extent Paula Jones alleged a violation of *Giglio v. United States*,[140] there is no violation as long as the evidence is disclosed to the defense before the end of trial.[141] The defense has provided no legal argument that calls into question the Court's ruling.

Paula Jones and Michael Jones also argue the Government improperly failed to provide them with Paula Jones' "work shop" draft papers, affecting the decision about whether she would testify.[142] In its order of August 27, 2018, the Court found these papers did not constitute a "relevant written or recorded statement" under Rule 16(a)(1)(B) of the Federal Rules of Criminal Procedure.[143] To the extent Paula Jones and Michael Jones argue there is a substantial question of law about the Court's application of Rule

---

[136] R. Doc. 1559-1 at 8, R. Doc. 1597-1 at 8.
[137] R. Doc. 1559-1 at 8, R. Doc. 1597-1 at 8.
[138] 353 U.S. 657, 658 (1957).
[139] R. Doc. 1482 at 104.
[140] 405 U.S. 150 (1972).
[141] R. Doc. 1482 at 104; *see also United States v. Baucum*, 146 F.3d 868, 1998 WL 327267 at *7 (5th Cir. 1998) ("Under *Brady* and *Giglio*, the defendants were not prejudiced by the government's failure to disclose because they obtained [the government witness's] criminal record prior to the end of trial.").
[142] R. Doc. 1559-1 at 8, R. Doc. 1597-1 at 8.
[143] R. Doc. 1482 at 105; FED. R. CRIM. P. 16(a)(1)(B) ("[T]he government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following: (i) any relevant written or recorded statement by the defendant if: statement is within the government's possession, custody, or control; and the attorney for the government knows—or through due diligence could know—that the statement exists.").

16(a)(1)(B), they cite no cases and include no analysis that calls into question the Court's ruling. As a result, Paula Jones and Michael Jones have failed to meet their burden of establishing the existence of a substantial question of law or fact relating to Paula Jones' "work shop" draft papers.

## VIII. Improper Leading Questions

Paula Jones and Michael Jones argue the Court erred when it overruled objections to the Government's asking leading questions of its witnesses throughout the trial.[144] Paula Jones and Michael Jones have not pointed to any particular leading questions that resulted in prejudice to them.[145] "[A] trial judge has reasonable discretion to permit leading questions," and the Fifth Circuit reviews its determinations for abuse of discretion.[146] Paula Jones and Michael Jones have not shown the Court abused its discretion with respect to objections to leading questions. Paula Jones and Michael Jones have not met their burden of proof of showing that a substantial question exists with respect to the correctness of the Court's evidentiary rulings.

## IX. Due Process Argument under *Napue v. Illinois*

Paula Jones argues she was denied due process by the Government's failure to admit to the jury that it impeached Crinel.[147] She contends there is a substantial question

---

[144] Paula Jones and Michael Jones state that "the Court's only relief would be an instruction to the Assistant U.S. Attorney to 're-phrase the question.'" R. Doc. 1559-1 at 9, R. Doc. 1597-1 at 9. They offer no basis for finding this improper. Barnes also raises this argument in one sentence in his motion. R. Doc. 1548-1 (mentioning "the prosecutor's continuing use of leading questions, and being permitted to do so over defense objections, with impunity, which, again, unduly prejudiced defense efforts").

[145] Paula Jones and Michael Jones point to the Government's allegedly leading Agent Bradford to testify as to the existence of kickbacks. At trial, the Court reviewed the record and found that a majority of the times Agent Bradford mentioned kickbacks actually occurred during her cross-examination by defense counsel. R. Doc. 1469 at 7:8–9.

[146] *See United States v. Johnson*, 495 F.2d 1097, 1101 (5th Cir. 1974) (citations omitted).

[147] R. Doc. 1559-1 at 13.

of law as to whether her due process rights were violated.[148] "An alleged due process violation is reviewed under a *de novo* standard."[149]

Paula Jones cites *Napue v. Illinois*, in which the Supreme Court held "the failure of the prosecutor to correct the testimony of the witness which he knew to be false denied [the defendant] due process of law."[150] This is true even when "the false testimony goes only to the credibility of the witness."[151] In *Napue*, the prosecutor promised to recommend a reduction of a witness' sentence in return for testimony and made no effort to correct the witness' testimony when he falsely testified that he had been promised nothing in return for his testimony.[152]

In this case, the Government *did* admit in its rebuttal that it impeached Crinel, stating, "Lisa Crinel? She was the leader of the conspiracy. Good grief. I did impeach my own witness. I didn't pick her."[153] Paula Jones has not shown that the Government did not correct testimony it knew to be false. Paula Jones raises no other basis on which to find a due process violation. She has not met her burden of showing a substantial question of law on this issue.

## X.     Paula Jones' Motion to Sever

Paula Jones argues the Court erred in denying her motion to sever her from the other defendants and refusing to give an instruction reminding the jury that she was charged only in Counts 1 and 2.[154] She argues there is a substantial question of law as to

---

[148] *Id.*
[149] *United States v. Burns*, 526 F.3d 852, 859 (5th Cir. 2008) (citing *United States v. Williams*, 343 F.3d 423, 439 (5th Cir.2003)).
[150] 360 U.S. 264, 265 (1959).
[151] *Id.* at 269.
[152] *Id.*
[153] R. Doc. 1103 at 10:14–16.
[154] R. Doc. 1559-1 at 13.

the correctness of the Court's denial of her motion and her request for a jury instruction. Under Fifth Circuit law, "severance is required on the basis of a disparity in the evidence only in the most extreme cases."[155] Relying on Rules 8(b) and 14(a) of the Federal Rules of Criminal Procedure, the Court concluded the trials of the counts alleged in the Second Superseding Indictment were properly joined.[156] The Court did instruct the jury that each count of the indictment charged separate counts against one or more the Defendants and that each count should be considered separately and individually.[157]

"[M]erely alleging a spillover effect—whereby the jury imputes the defendant's guilt based on evidence presented against his co-defendants—is an insufficient predicate for a motion to sever. Instead, a defendant must prove that: (1) the joint trial prejudiced him to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration."[158] Paula Jones alleges a spillover effect, but cites no cases to establish a substantial doubt as to the correctness of the Court's rulings on this issue.[159] The Fifth Circuit "reviews a denial of a motion for severance for abuse of discretion."[160] Paula Jones has not shown the Court abused its discretion in denying her motion to sever. As a result, the Court denies her motion for bond pending appeal on this basis.

---

[155] *United States v. Rocha*, 916 F.2d 219, 229 (5th Cir. 1990).
[156] R. Doc. 1482 at 109.
[157] R. Doc. 1066 at 17.
[158] *United States v. Reed*, 908 F.3d 102, 114 (5th Cir. 2018) (citations and internal quotations omitted) (affirming denial of motion to sever).
[159] R. Doc. 1559-1 at 13.
[160] *United States v. Owens*, 683 F.3d 93, 98 (5th Cir. 2012) (citing *United States v. Lewis,* 476 F.3d 369, 383 (5th Cir.2007)).

## XI.     Deliberate Ignorance Jury Instruction

Paula Jones argues the Court erred when it gave an instruction about deliberate ignorance and failed to notify the jury that the instruction did not apply to all Defendants.[161] Before trial, the parties included the Fifth Circuit pattern jury instruction for deliberate ignorance in their proposed jury instructions,[162] and Paula Jones did not object to the instruction at that time or request that the Court instruct the jury that deliberate ignorance may not apply to all Defendants. During trial, Paula Jones objected to the inclusion of the deliberate ignorance instruction,[163] but the Court overruled her objection. In its order of August 27, 2018, the Court explained the instruction was appropriate because "Paula Jones was (1) subjectively aware of a high probability of illegal conduct, and (2) purposefully contrived to avoid learning of the illegal conduct."[164]

Paula Jones argues there is a substantial question of law as to the correctness of the Court's overruling her objection. She cites *United States v. Reissig*, in which the Fifth Circuit addressed how district courts may deal with the possibility of prejudice in cases involving multiple defendants in which the deliberate ignorance instruction is appropriate for some defendants, but not others.[165] Paula Jones also cites *United States v. Bieganowski*, in which the Fifth Circuit acknowledged "the possibility that, on particular facts, it might so mislead a jury to give a general instruction, rather than one tailored to a specific defendant or rather than no instruction at all, as to be an abuse of

---

[161] R. Doc. 1559-1 at 13–16.
[162] R. Doc. 952 at 2.
[163] Counsel for Paula Jones objected on the record to the deliberate ignorance instruction. R. Doc. 1652 at 185:12–187:23.
[164] R. Doc. 1482 at 76 (finding Paula Jones satisfied the test stated in *United States v. Mendoza-Medina*, 346 F.3d 121, 133 (5th Cir. 2003)).
[165] 186 F.3d 617, 619 (5th Cir. 1999).

discretion."[166] Paula Jones argues that the deliberate ignorance instruction was inappropriate as to her because she "did not testify at trial[,] and she was not allowed to present her theory of defense as a jury instruction."[167]

In its previous order, the Court reviewed the factual testimony presented at trial and found the instruction appropriate as to Paula Jones.[168] The Court explained the testimony as follows:

> First, contrary to her assertions, Paula Jones did in fact argue that she did not have guilty knowledge of the criminal scheme. Her requested summary of defense instruction, which was not given by the Court, stated she "merely processed such documentation with no reason to believe it to be false or fraudulent. She is the mere recipient of salary checks for her services, and had no reason to believe that any portion of her salary was a kickback as alleged by the Government." In his opening statement, counsel for Paula Jones asserted she was unaware of the true reason for her salary increase, as "Paula [was] not even part of that conversation." Further, during closing argument, Paula Jones' counsel argued "there's a reasonable basis for her to believe in her mind she is not doing anything wrong." Accordingly, it is clear that Paula Jones "claim[ed] a lack of guilty knowledge."
>
> Second, the evidence at trial supports an inference that "(1) the defendant was subjectively aware of a high probability of the existence of the illegal conduct, and (2) the defendant purposely contrived to avoid learning of the illegal conduct." Evidence was introduced at trial that Paula Jones was initially hired by Lisa Crinel at a salary of $45,000. A few months later, Paula Jones' salary was doubled. There was testimony at trial that this increase in salary had nothing to do with a change in circumstances or an addition of any work duties. No evidence was introduced that the promotion was related to any change to Paula Jones' responsibilities, title, or part-time work schedule. Instead, testimony at trial demonstrated that the doubling of Paula Jones' salary was the result of an in-kind kickback paid by Lisa Crinel and Abide in return for Michael Jones sending more referrals to Abide. Lisa Crinel testified that when she approached Paula Jones to express her frustration with Michael Jones' failure to send the promised number of referrals, Paula Jones told Crinel, "That's between you and Michael and I'm not going to get involved in that." This testimony supports an inference that Paula Jones was (1) subjectively aware of a high

---

[166] 313 F.3d 264, 290 (5th Cir. 2002) (quoting *United States v. Brandon*, 17 F.3d 409, 453 (1st Cir.1994)).
[167] R. Doc. 1559-1 at 15.
[168] R. Doc. 1482 at 76.

> probability of illegal conduct, and (2) purposefully contrived to avoid learning of the illegal conduct.[169]

As a result, the Court found the deliberate ignorance instruction was appropriate. Paula Jones has failed to demonstrate a substantial issue of law or fact on the issue.

Even if there was a substantial question of law as to the Court's refusal to give Paula Jones' requested instruction, she has failed to show that, if the issue were resolved in her favor, an appellate court would likely reverse or order a new trial. The Fifth Circuit "review[s] the decision to use the deliberate ignorance instruction under an abuse of discretion standard."[170] In its order on Paula Jones' motion for new trial, this Court found that any error that resulted from the deliberate ignorance instruction was harmless because "[g]iving an instruction on deliberate ignorance 'constitutes harmless error where substantial evidence of actual knowledge exists.'"[171] Paula Jones' motion for release pending appeal on this basis is denied.[172]

## XII.    Reasonable Doubt Jury Instruction

Paula Jones argues the Court erroneously denied her request for the Court to instruct the jury that "[i]f there are two reasonable theories or explanations that can be drawn from the evidence or from the lack of evidence, one consistent with guilt and one consistent with innocence," the jury must accept the latter.[173] She argues the jury could have found credible her theory of her defense that her salary increase was merit-based and she had no reason to suspect any other motivation for it.[174] She argues there is a

---

[169] R. Doc. 1482 at 75−76 (citations omitted).
[170] *United States v. Nguyen,* 493 F.3d 613, 619 (5th Cir. 2007) (citing *United States v. Fuchs,* 467 F.3d 889, 902 (5th Cir. 2007)).
[171] R. Doc. 1482 at 76 (quoting *United States v. Boutte,* 13 F.3d 855, 859 (5th Cir. 1994)).
[172] Even if there were a substantial issue of law or fact, the Court has found any error harmless based on the facts in this case. *Id.* at 76−77.
[173] R. Doc. 1559-1 at 15−16.
[174] *Id.* at 16.

substantial question of law or fact as to the Court's refusal to give her requested instruction.

"As a general proposition a defendant is entitled to any instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in [her] favor."[175] The Court finds the evidence presented at trial was insufficient for a reasonable jury to find in Paula Jones' favor on this question. As the Court explained in its order of August 27, 2018:

> Paula Jones was initially hired by Lisa Crinel at a salary of $45,000. A few months later, Paula Jones' salary was doubled. There was testimony at trial that this increase in salary had nothing to do with a change in circumstances or an addition of any work duties. No evidence was introduced that the promotion was related to any change to Paula Jones' responsibilities, title, or part-time work schedule. Instead, testimony at trial demonstrated that the doubling of Paula Jones' salary was the result of an in-kind kickback paid by Lisa Crinel and Abide in return for Michael Jones sending more referrals to Abide.[176]

Paula Jones has not demonstrated that there was sufficient evidence for a reasonable jury to find her salary increase was merit-based and that she had no reason to suspect any other motivation for it. As a result, she has not shown the Court was required to give the requested jury instruction on reasonable doubt. She has not met her burden of showing a substantial question of law or fact on this issue.

Even if an appellate court finds the Court's refusal to give the jury instruction to be erroneous, such refusals are reviewed for abuse of discretion.[177] Paula Jones has not demonstrated that an appellate court would more likely than not reverse her conviction or order a new trial because of a failure to give this instruction.

---

[175] *United States v. Caldwell*, 257 F. App'x 764, 769 (5th Cir. 2007) (quoting *United States v. Branch*, 91 F.3d 699, 711–12 (5th Cir.1996)).
[176] R. Doc. 1482 at 76 (citations omitted).
[177] *Caldwell*, 257 F. App'x at 769.

## XIII.  Cumulative Effect

Paula Jones argues the cumulative effect of all the errors she enumerates justifies a new trial.[178] The Fifth Circuit has explained the cumulative error doctrine is to be used only in rare instances. "Reversal is justified only when errors 'so fatally infect the trial that they violated the trial's fundamental fairness.'"[179]

In its order of August 27, 2018, the Court found the cumulative error doctrine does not apply because it "determined the prosecution's remarks during rebuttal were error but harmless error, and that all other allegations of error by the Defendants are meritless. . . . [T]he only error to 'accumulate' is the prosecution's remark during closing argument," and the Court found that error harmless.[180] Paula Jones makes no arguments that raise a substantial question of law or fact on this issue.[181] She has not shown she is entitled to release pending appeal.

## XIV.  Expert Testimony

Evans argues the Court erred in allowing its expert Dr. Brobson Lutz to testify as to the meaning of "homebound."[182] He argues the Government failed to establish a sufficient foundation for Lutz's expert testimony and that Lutz's definition of "homebound" is unsupported.[183] He argues there is a substantial question of law as to whether Lutz's testimony as to the meaning of "homebound" was properly allowed.

---

[178] R. Doc. 1559-1 at 18.
[179] *United States v. Cervantes*, 706 F.3d 603, 619 (5th Cir. 2013) (quoting *United States v. Delgado*, 672 F.3d 320, 343–44 (5th Cir. 2012) (en banc)).
[180] R. Doc. 1482 at 112–13.
[181] Paula Jones makes a passing reference to the Court's refusal to instruct the jury on her theory of defense. R. Doc. 1559-1 at 16. This is insufficient to satisfy her burden of raising a substantial question of law that, if resolved in her favor, would be likely to result in reversal or a new trial. As a result, the Court does not address this argument.
[182] R. Doc. 1608-1 at 7–8.
[183] *Id.*

The Court addressed these arguments in its order of August 27, 2018, finding Lutz was properly certified as an expert and that Defendants had "ample opportunity" to challenge his definition of "homebound" on cross-examination.[184] Evans has not shown substantial doubt as to the correctness of these evidentiary rulings. Even if he had, the Fifth Circuit reviews the district court's determination of admissibility of expert testimony under *Daubert* for abuse of discretion. If [it] find[s] an abuse of discretion, [it] review[s] the error under the harmless error doctrine, affirming the judgment unless the ruling affected substantial rights of the complaining party."[185] Evans has not shown an appellate court would likely find the Court abused its discretion or that the ruling affected his substantial rights. As a result, the Court denies Evans' motion for release pending appeal on the basis of alleged error in admitting Lutz's testimony.

## XV. Loss Calculation

Evans argues the Court erred in estimating the amount of loss attributable to him to be $1,262,043 for purposes of his sentencing range under the United States Sentencing Guidelines.[186] Evans notes he was acquitted of the conspiracy charges brought against him.[187] He argues there is a substantial question of law as to the correctness of the Court's finding that Evans' counts of conviction for healthcare fraud convicted him of a larger scheme to defraud.[188] He also argues that, because "no evidence was offered by the Government as to any specific patient whose Case Mix diagnosis was medically

---

[184] R. Doc. 1482 at 62–66.
[185] *United States v. Ramos*, 71 F. App'x 334, 335 (5th Cir. 2003) (citations, internal quotation marks and internal brackets omitted).
[186] R. Doc. 1608-1 at 9–10.
[187] *Id.*
[188] *Id.*

unsupported," there cannot be an "upward adjustment" to the calculation of his Sentencing Guidelines range.[189]

In order to calculate an offense level under the Sentencing Guidelines, a court must estimate the loss that resulted from the fraud.[190] A sentencing court "need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence."[191] In this case, the Court found the loss calculation should include only Medicare payments made after each defendant began to participate in the conspiracy or scheme.[192] For its calculations, the Court used September 11, 2011, the date of Evans' first medical director agreement with Abide, as the starting date of Evans' participation in a scheme to defraud Medicare.[193] The Court found the Government had provided sufficient evidence at trial to establish the veracity of that date.[194] The Court also found as a matter of fact that Evans' participation in the conspiracy continued until the conclusion of the conspiracy.[195] For its calculations, the Court used an end date of June 9, 2014.[196]

At sentencing, the Court found as a matter of fact that the fraud in this case "was pervasive and difficult to detect."[197] Citing *United States v. Hebron*,[198] the Court determined the fraud was "so pervasive that separating legitimate from fraudulent conduct [was] not reasonably practicable," and the Court could not "subtract any amounts

---

[189] *Id.*
[190] U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. 3(C).
[191] *Id.*
[192] R. Doc. 1662 at 19:18–22.
[193] *Id.* at 20: 1–2.
[194] *Id.* at 20:4–15.
[195] *Id.* at 21: 3–5.
[196] *Id.* at 21:7–12.
[197] *Id.* at 22:6.
[198] 684 F.3d 554 (5th Cir. 2012).

from the actual loss calculation."[199] Citing Trial Exhibits 1421 and 1422, the Court found Medicare paid Abide Part A payments in the amount of $1,248,592 based on Evans' certification of patients, and Medicare paid Evans $13,451 based on his Part B billing.[200] The Court added these figures and used the resulting total of $1,262,043 to determine Evans' Guidelines range.

Before sentencing, the Government argued the Court should charge all the Defendants for the loss attributable to the entire scheme, pursuant to United States Sentencing Guidelines Manual § 1B1.3(a)(1)(B).[201] The Court found the Government had *not* proved by a preponderance of the evidence that Evans' jointly undertaken criminal activity encompassed the fraudulent conduct beyond his own acts and patients.[202] To the extent Evans alleges the Court based its calculations on the conduct of all the Defendants, his allegation is incorrect. In calculating Evans' offense level under the Sentencing Guidelines, the Court used only conduct relating to Evans' own acts and patients.

The Court calculated Evans' Guidelines range under § 1B1.3(a)(1)(A), which provides that relevant conduct for sentencing purposes includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."[203]

---

[199] R. Doc. 1662 at 22:19–23:1.
[200] *Id.* at 23:13–24:5.
[201] R. Doc. 1417 at 17–29. Under § 1B1.3(a)(1)(B), when calculating an offense level under the Sentencing Guidelines for a "a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," a court includes "all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(1)(B).
[202] R. Doc. 1662 at 17:12–15.
[203] U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(1)(A).

Evans correctly states the Court's calculation of the loss amount for which he was responsible was "based on the Court's finding that the counts of conviction were part of a larger 'scheme to defraud.'" [204] Evans argues there is a substantial question of law as to the correctness of that finding, but does not cite any law to support his position.

To the extent Evans argues the jury did not convict him of participating in a scheme to defraud, the Court notes 18 U.S.C. § 1347(a), the statute under which Evans was convicted, makes it a crime for anyone to "knowingly and willfully execute[], or attempt[] to execute, a *scheme or artifice to defraud* any health care benefit program; or to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program."[205] In convicting Evans of eight counts of health care fraud, the jury necessarily found Evans participated in a scheme. Evans has not raised a substantial question of law on this basis.

Evans argues his Guidelines range should be calculated based solely on the amounts listed in the counts of conviction.[206] The Court is aware of no cases, and Evans cites none, in support of the proposition that a sentencing court's loss calculations are limited to amounts in the counts of conviction. Under § 1B1.3(a)(1)(A) of the Sentencing Guidelines, the Court is permitted to consider all relevant conduct committed by the defendant.[207] In *United States v. Hull*, the Fifth Circuit explained, "[t]he government must prove all elements of a criminal offense beyond a reasonable doubt. But, findings of fact for sentencing purposes need meet only the lower standard of preponderance of

---

[204] R. Doc. 1608-1 at 9.
[205] 18 U.S.C. § 1347(a) (emphasis added).
[206] R. Doc. 1608-1 at 10.
[207] *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(1)(A).

evidence. Therefore, a finding that [the defendant] was not guilty of conspiracy for purposes of conviction is not inconsistent with a finding that he was a conspirator for purposes of sentencing." [208] The Court in *Hull* held that, in calculating the Guidelines range for a defendant convicted of fraud but acquitted of conspiracy to commit fraud, a court could include reasonably foreseeable loss caused by co-conspirators, pursuant to § 1B1.3(a)(1)(B). [209] Although the calculation in *Hull* involved § 1B1.3(a)(1)(B), and this Court calculated Evans' relevant conduct under § 1B1.3(a)(1)(A) based on only his own conduct, the same principle applies. At sentencing in this case, the Court cited *Hull* and explained that Evans' acquittal on the conspiracy charge does not preclude the Court from holding him responsible for relevant conduct in the entire scheme. [210] Evans cites no cases with a contrary holding. He has not met his burden of raising a substantial question of law or fact on this basis.

"[T]he calculation of the amount of loss is a factual finding reviewed for clear error, . . . [but] the method used to calculate loss . . . , as an application of the guidelines, is reviewed de novo." [211] However, the Fifth Circuit has stated that "the guidelines emphasize the deference that must be shown to the sentencing judge, who is in a unique position to assess the applicable loss, so [the appellate] court need only determine whether the district court made 'a reasonable estimate of the loss.'" [212] The Fifth Circuit does not "determine whether the district court's estimate was the *most* reasonable, but rather only that it is *a* reasonable calculation." [213]

---

[208] 160 F.3d 265, 269 (5th Cir. 1998).
[209] *Id.*
[210] R. Doc. 1662 at 15:4–14.
[211] *United States v. Hebron,* 684 F.3d 554, 560 (5th Cir. 2012) (citing *United States v. Harris,* 597 F.3d 242, 250–51 (5th Cir.2010); *United States v. Sanders,* 343 F.3d 511, 520 (5th Cir.2003)).
[212] *Id.* (quoting U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. 3(C)).
[213] *Id.* at 564 (emphasis added).

The Court denies Evans' motion for release pending appeal on the basis of his challenge to his sentence calculations.

### XVI.  Paula Jones' Motion for Equitable Relief with Regard to Child Care

Paula Jones moves for equitable relief regarding child care.[214] Her sentence is a term of imprisonment for a year and a day, followed by three years of supervised release, the first 24 months of which are to be in home detention.[215] In the instant motion, she moves to serve the two-year term of home detention first, followed by her term of incarceration.[216]

The Court is cognizant of the adverse effect that incarceration may have on the minor children of Paula Jones and Michael Jones. However, the Court is not aware of any authority, and Paula Jones cites none, that would permit the Court to order that her term of supervised release be served before her term of imprisonment. To the contrary, 18 U.S.C. § 3583 provides only for "a term of supervised release *after* imprisonment."[217] As a result, the Court denies Paula Jones' motion for equitable relief with regard to child care. At sentencing, the Court recommended that, if practicable, Paula Jones complete her term of incarceration before Michael Jones begins his term.[218] In denying Michael Jones' and Paula Jones' motions for bond pending appeal, the Court's recommendation remains unaffected.

---

[214] R. Doc. 1559-1 at 19.
[215] R. Doc. 1662 at 108–09.
[216] R. Doc. 1559-1 at 19.
[217] 18 U.S.C. § 3583(a) (emphasis added).
[218] R. Doc. 1662 at 121.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that (1) Defendant Shelton Barnes' Motion for Release Pending Appeal[219] is **DENIED**; (2) Defendant Gregory Molden's Motion for Release Pending Appeal[220] is **DENIED**; (3) Defendant Paula Jones' Motion for Release Pending Appeal and Motion for Equitable Relief with regard to Childcare[221] is **DENIED**; (4) Defendant Michael Jones' Motion for Release Pending Appeal[222] is **DENIED**; and (5) Defendant Henry Evans' Motion for Release Pending Appeal[223] is **DENIED**.

**New Orleans, Louisiana, this 15th day of January, 2019.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[219] R. Doc. 1548.
[220] R. Doc. 1553.
[221] R. Doc. 1559.
[222] R. Doc. 1597.
[223] R. Doc. 1608.